**W. Keith SCHILLING, Fairfield Township Trustee, Appellant (Defendant and Counterclaimant Below),**

v.

**LAFAYETTE SCHOOL CORPORATION, BOARD OF SCHOOL TRUSTEES, Appellees (Plaintiff Below),**

and

**Patricia E. Stephenson, Arlan N. Stavnheim, Edward J. Weast, T. Lowell Landrum, Russell B. Dickinson, and Sarah J. Hicks, individually and as members of the Board of School Trustees, Appellees (Counterclaim Defendants Below).**

No. 79A02–8710–CV–00420.

Court of Appeals of Indiana, Second District.

April 27, 1989.

---

Cy Gerde, Hanna, Gerde & Burns, Lafayette, for appellant.

E. Kent Moore, Donald Clementson–Mohr, Cooke, Bache, Moore, Laszynski & Yeager, Lafayette, for appellees.

SULLIVAN, Judge.

Lafayette School Corporation ("LSC") filed a complaint to quiet title to a tract of real estate located in Fairfield Township, Tippecanoe County, Indiana, commonly known as Crouch School. The complaint was filed against W. Keith Schilling ("Schilling"), the trustee of Fairfield Township. Record title was allegedly held by the Trustee.[1] Schilling filed a counterclaim, requesting the court to return full right of possession to Fairfield Township. The trial court granted summary judgment in favor of Lafayette School Corporation and Schilling appeals.

We affirm.

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On review, the court must liberally construe all evidence in favor of the nonmovant and resolve any doubt as to the existence of a genuine issue against the proponent of the motion. *Lafary v. Lafary* (1985) 4th Dist. Ind.App., 476 N.E.2d 155. However, the trial court's judgment will be affirmed if sustainable upon any theory or basis found in the record. *Havert v. Caldwell* (1983) Ind., 452 N.E.2d 154.

Effective January 1, 1963, all school corporations in Tippecanoe County were reorganized into three separate school systems: West Lafayette School Corporation, Lafayette School Corporation and Tippecanoe School Corporation. This reorganization was made pursuant to the School Reorganization Act of 1959, which required all counties within the state to formulate a plan reorganizing the existing school corpora-

---

1. The parties refer alternately to title being held in the name of the township and in the name of the trustee. The distinction is immaterial in any event because the trustee holds the property in trust for the township.

tions within each county pursuant to a detailed scheme set out in I.C. 20–4–1–1 *et seq.* The purpose of the Reorganization Act was to improve the organization of the school corporations in order to provide a more equalized educational opportunity for public school pupils, achieve greater equity in school tax rates among the inhabitants of the various school district corporations, and provide a more effective use of the public funds expended for the support of the public school system. I.C. 20–4–1–1 (Burns Code Ed.Repl.1985).[2]

As part of Tippecanoe County's reorganization, Fairfield Township was divided. Part of it went into the Tippecanoe School Corporation and part of it, Crouch School, went into the Lafayette School Corporation. LSC claims that when possession of the property passed to the corporation, title also passed, despite the fact that no document was actually recorded transferring title.

Schilling, however, contends that while possession was transferred, title remained in the township. According to Schilling, a crucial part of the reorganization plan was "a resolution that all successor school corporations ... upon ceasing to use [the] facilities shall return them to the community originally acquiring the land and constructing the respective facilities." Record at 21. Schilling claims that there was no tangible "resolution" as such, but that the reorganization committee had made a determination that the schools should be returned because of the disparity in the quantity and quality of the various schools. In that way good facilities went back to their communities, while poor facilities went

back to the communities that had spent less to acquire and maintain those facilities.[3] Schilling claims that seven school facilities have already been returned to their respective communities after ceasing to be used by the new school corporation.[4]

At the summary judgment hearing, LSC claimed that title passed as a matter of law pursuant to I.C. 20–4–5–8 (Burns Code Ed. Repl.1985), which provides in part as follows:

"When any such school town or towns, school city or cities, school township or townships, joint schools or consolidated schools shall have become thus consolidated by resolution, or election, as hereinbefore provided, and the new school board shall have been appointed, and have been duly and legally organized as hereinbefore provided, such school township or townships, school town or towns or such school city or cities, joint schools or consolidated schools shall be deemed to have been abandoned and all their school property, rights, and privileges as well as any indebtedness it may have, shall be deemed to have accrued to and be assumed by the new consolidated school corporation, and the title of such property shall pass to and become vested in the new consolidated school corporation, and all debts of the former school corporations shall be assumed and paid by such new consolidated school corporation, and all the privileges and rights conferred by law upon such school township, school towns, school cities, joint schools or consolidated schools shall be and are granted to such newly consolidated school corporation."

2. The statement of purpose was unchanged by a 1984 amendment.

3. Schilling also maintains that because of the disparity, taxpayers who had paid to build good facilities would, as a result of the reorganization, be forced to pay the debts to build new facilities for the education of residents of areas that had not previously expended as much to meet their needs. This argument seems somewhat convoluted. The appropriate taxpayers will be subject to taxation regardless whether the property "reverts back" to the township at a

later date. *Cf. Cottongim v. Congleton* (1964) 245 Ind. 387, 199 N.E.2d 96 (court rejected argument of taxpayers of Franklin Township that it would be unconstitutional for the taxpayers to be taxed for a portion of a prior debt of another component part of the reorganized school corporation).

4. LSC's Motion to Strike Exhibits B and C, which are contained in Appellant's Brief and are not in the record, and all references thereto, is hereby granted. Accordingly, we disregard the assertion made in this respect.

LSC also claims that I.C. 20–4–1–26(10),[5] whether or not read in *pari materia* with I.C. 20–4–5–8, mandates the same result. This statute provides:

"The transfer of powers, duties, property rights, other assets, liabilities, contracts both as to rights and obligations, and all else connected with the transfer of authority from existing school corporations to the community school corporation shall take place at the time of the formation and creation of the community school corporations and are declared vested in the community school corporations of that time."

Finally, LSC argues that the reorganization plan itself provided that property held by the former corporations would pass to the successor corporations, citing the following section from the reorganization plan:

### "ASSETS AND LIABILITIES

All assets and liabilities of the corporations within the respective proposed school corporations of Tippecanoe County shall become the assets and liabilities of the respective proposed corporations.

Each proposed school corporation shall pay to each civil township, civil city or civil town, located therein, which has issued school aid bonds, prior to the due date thereof, amounts sufficient to pay principal and interest on such school aid bonds." Record at 79.

LSC claims that the reorganization committee had no discretion to decide not to pass fee simple title of Crouch School to LSC because legal title became vested in LSC at the moment of formation of the new school corporation. LSC argues that because pre-existing school corporations were dissolved pursuant to I.C. 20–4–1–3, it is only logical that legal title passed to the new corporation.[6]

Schilling contends that I.C. 20–4–5–8 is inapplicable to the instant case because it is a pre-reorganization act statute (originally enacted in 1947) designed to apply only in the situation where two school corporations were consolidated, i.e., merged together, with one corporate entity resulting. Schilling contends a consolidation as contemplated by I.C. 20–4–5–8 did not occur in the instant case because Fairfield was divided and merged into two different entities. Schilling claims that in any event, the reorganization committee had determined they would pass only possession, not title, and it was not required to record a reversionary interest in the property when title had not passed to LSC in the first place.

The essential issues upon appeal, as restated by us, are as follows:

1. Did the trial court err when it granted summary judgment to LSC upon grounds that no material factual issue existed and that title to the property passed as a matter of law?

2. Did the trial court err in failing to require joinder of the fiscal body of Fairfield Township?

3. Did the trial court err in granting summary judgment while Schilling's request for production of documents remained pending?

### I.

In determining that LSC was entitled to summary judgment, the trial court based its decision upon I.C. 20–4–5–8, *supra*, and the reorganization plan provision entitled "Assets and Liabilities," *supra*. The court was also persuaded by the extracts of minutes of the LSC Board of School Trustees introduced at the hearing by LSC. These extracts failed to indicate that LSC was taking title to the property subject to any reversionary interest in Fairfield Township or was merely taking possession without title. The court also rejected any claim by Schilling of a constructive trust in the absence of a fiduciary or confidential relationship between LSC and Fairfield Township.

Although I.C. 20–4–1–26(10) was discussed at the hearing, the trial court did

---

**5.** This provision is currently identified as I.C. 20–4–1–26.7 (Burns Code Ed.Supp.1988).

**6.** This argument assumes that title was held in the school township's name and not the civil township's name.

not make any finding or conclusion with respect to it. A review of the record, however, discloses that the statute was initially brought to the trial court's attention by Schilling. While the court indicated that he thought I.C. 20–4–1–26(10) was consistent with I.C. 20–4–5–8, Schilling argued that 20–4–1–26(10) merely transferred whatever property or assets the reorganization committee specified, intended, or had the power to transfer and that it did not operate to automatically transfer property from the then-existing corporations to the successor corporation.

■ We conclude that the legislature intended I.C. 20–4–1–26(10) to transfer title to real property, as well as other assets, liabilities and contracts from the prior corporations to the successor corporations. Our holding is based upon several factors.

In *Szilagyi v. State ex rel. La Porte Community School Corporation* (1967) 249 Ind. 400, 231 N.E.2d 221, the newly formed La Porte Community School Corporation sought an order mandating the trustee of Pleasant Township to transfer school township funds, assets and liabilities to the community school corporation pursuant to I.C. 20–4–1–26(10), following approval of the reorganization plan by the voters. The trial court ordered the trustee to transfer all cash, bank accounts, dues and credits, certificates of title to motor vehicles and all other equipment, personal property and school furnishings, insofar as connected with school purposes, and additionally all real property acquired in the name of the school township for school purposes. The parties did not question whether the statute operated to transfer title to property or any other assets and liabilities evidently assuming it did, but instead argued the validity of the reorganization plan and the applicability of the Administrative Adjudication and Court Review Act. Our supreme court affirmed the order, stating that "the evidence fully supports the findings and judgment and does not in any way indicate other than an obtuse attitude toward orderly administration of school af-

fairs upon the part of [the trustee]." *Id.* at 405, 231 N.E.2d 221. Thus, although the issue whether a party could retain a reversionary interest in property was not litigated, there is a doctrinal implication in the case that I.C. 20–4–1–26(10) operates to automatically transfer title.

■ Although Schilling's argument that the property should be returned to the entity from which it came upon ceasing to be needed for educational purposes has some logical appeal, we cannot agree with his interpretation of I.C. 20–4–1–26(10). It is clear from I.C. 20–4–5–8 that if all of Fairfield Township had been consolidated with another school corporation pursuant to the Consolidation Act, title would have passed to the new school corporation. Considering the fact that consolidation was one of the main methods by which reorganization was to be accomplished (as is evidenced by the definition of "reorganization of school corporations" contained in I.C. 20–4–1–3), it is unlikely that the legislature contemplated a different scheme regarding the transfer of assets and liabilities between school corporations merely because the consolidation occurred under the Reorganization Act instead of I.C. 20–4–5–8 of the Consolidation Act.

Our interpretation of I.C. 20–4–1–26(10) is supported by a 1963 amendment to the Reorganization Act which provides that the disposition of assets and liabilities need be stated in the plan only when an existing school corporation is divided.

"In instances where existing school corporations are not divided the assets, liabilities, and obligations of the existing school corporations are to be transferred to and assumed by the new community school corporation of which they are a part, without any provisions therefor being made in the plan." I.C. 20–4–1–8(b).[7]

We can conceive of no reason why the legislature would have intended that school corporations which are divided instead of being completely merged or transferred into one corporation should be able to pick and choose which assets or liabilities they

---

7. Similar changes were made elsewhere in the Act pursuant to the 1963 amendment. *See, e.g.,* I.C. 20–4–1–12.

wish to transfer and which they wish to retain. We hold that the legislature intended by this amendment to clarify that all existing assets, liabilities and obligations are transferred to the new community school corporation or corporations. The fact that the disposition of assets and liabilities is required to be stated in the plan only where an existing school corporation is divided merely means that it must be clear which assets of the existing corporation are to go to one successor corporation and which are to go to another successor corporation.[8]

Although the legislature was not as specific regarding the transfer of real estate title and other assets or liabilities in the Reorganization Act as in other statutes, the Reorganization Act provides no direct authority for the retention or reversion of any property or assets subsequent to the property's disuse for educational purposes. *See, e.g.,* I.C. 20–4–13–1 (Burns Code Ed. Repl.1985)[9] (any third class city constituting part of the territory of a consolidated school corporation may grant to the consolidated school corporation any building or real estate to be used for school purposes; it may also provide by deed that in the event such property is no longer needed for school purposes, it shall revert to the city).

Given the statute's silence as to the status of title to real property, as well as other assets, upon ceasing to be needed for educational purposes, the intent of the legislature to broaden the tax base by extending the boundaries of the school corporations,[10] and the other factors heretofore mentioned, we held that the legislature intended for title to real estate and all assets and liabilities to pass pursuant to I.C. 4–20–1–26(10).

## II.

◼ Schilling claims that the trial court erred in denying his motion to dismiss or,

alternatively, in failing to require joinder of the township's fiscal body. This motion was premised upon I.C. 36–1–11–3(b) (Burns Code Ed.Supp.1988) which, it is argued, requires joinder of the Fairfield Township Board. The provision is as follows:

"(b) In addition, the fiscal body of a unit must approve:

(1) Every sale of real property having an appraised value of ten thousand dollars ($10,000) or more;

(2) Every lease of real property for which the total annual rental payments will be three thousand dollars ($3,000) or more; and

(3) Every transfer of real property under section 14 or 15 [36–1–11–14 or 36–1–11–15] of this chapter."

Schilling contends that the effect of the summary judgment was to dispose of the township's real property without the fiscal body's approval and asserts that the question of the property's value was a factual issue which needed to be resolved.

This argument is without merit. No sale or lease as contemplated by the statute was involved. Furthermore, in light of our holding that title was transferred as a matter of law, no approval by the fiscal body was necessary.

## III.

◼ Finally, Schilling argues that the trial court erred in granting summary judgment while Schilling's discovery request was still pending.

A review of the record discloses that the complaint to quiet title was filed March 25, 1987. The motion for summary judgment was filed June 15, 1987. On that date the court set the matter for hearing on July 6, 1987. Schilling did not file a request for production of documents pursuant to Ind. Rules of Procedure, Trial Rule 34(B) until June 25, 1987.

---

8. See, e.g., the proposed preliminary reorganization plan in *Good v. Western Pulaski County School Corp.* (1965) 139 Ind.App. 567, 210 N.E. 2d 100, *trans. denied.*

9. Formerly Acts 1955, c. 126, s. 1.

10. "We think the purpose of the school reorganization act of 1959 in carrying out the legislative

intent, was to consolidate schools to broaden the tax base and bring about more equitable and uniform educational advantages for the entire school population." *Duda v. New Prairie United Corp.* (1966) 140 Ind.App. 528, 224 N.E.2d 327, 335.

In *Chustak v. Northern Indiana Public Service Co.* (1972) 259 Ind. 390, 288 N.E.2d 149, a hearing originally scheduled for November 2, 1970, was continued by agreement to November 12. The defendant requested document production on November 9, 1970. Our supreme court found this to be unreasonable because the defendant on October 27, 1970, had notice of the future proceedings. The court stated: "A party may not wait until the last possible moment to act, then rely upon the discovery rules and expect the court to halt its proceedings in order to accommodate his motion." *Id.* at 154. The court stated that the proper course would have been to seasonably request discovery and ascertain whether the opposing party would agree to early production of the requested materials. If not, the proper procedure would then be to request the court to require a reply in a shorter time than the 30–day period provided by T.R. 34(B) or move for a continuance of the hearing.

While Schilling's delay in this case was not egregious, the *Chustak* court's reasoning is persuasive. *See also Hebel v. Conrail, Inc.* (1985) Ind., 475 N.E.2d 652 (no showing of harm where plaintiff made no motion to shorten the 30–day response period under T.R. 34(B) after requesting discovery only two weeks prior to trial in addition to failing to make an in-trial motion addressed to defendant's failure to comply).

Additionally, while it may generally be considered improper to grant summary judgment pending discovery, an exception exists when the pending discovery is unlikely to develop a genuine issue of material fact. *Roark v. City of New Albany* (1984) 4th Dist.Ind.App., 466 N.E.2d 62; *Ludwig v. Ford Motor Co.* (1987) 1st Dist. Ind.App., 510 N.E.2d 691, *trans. denied.* Our holding that title passed as a matter of law forecloses the possibility of a material factual issue being developed by the discovery.

The judgment is affirmed.

RATLIFF, C.J., and SHIELDS, P.J., concur.

