David L. COLLINS, Appellant–Plaintiff,

v.

J.A. HOUSE, INC., and Pepper Indiana Partnership, Appellees–Defendants.

No. 49A04–9708–CV–337.

Court of Appeals of Indiana.

Feb. 17, 1999.

Rehearing Denied March 26, 1999.

---

Sharon R. Merriman, Symmes Voyles Zahn Paul & Hogan, Indianapolis, Stephen B. Caplin, Caplin Pehler Park & Tousley, Indianapolis, Attorneys for Appellant.

Kenneth P. Reese, Lewis & Wagner, Indianapolis, James D. Crum, Coots Henke & Wheeler, Carmel, Attorneys for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant, David L. Collins (Collins), appeals an order granting summary judgment in favor of J.A. House, Inc., (House) and Pepper Indiana Partnership (Pepper). Collins initiated this lawsuit after he fell from a scaffold during an expansion and renovation project at St. Vincent Hospital and Health Care Center, Inc. (St. Vincent). Although we affirm the grant of summary judgment in favor of House, we reverse in part in regard to Pepper and remand for proceedings not inconsistent with this opinion.

The facts most favorable to the nonmoving party reveal that in November of 1992, St. Vincent, located in Indianapolis, was being expanded and renovated. Prior to the project, St. Vincent entered into contracts with several different companies including, Pepper, the construction manager on the project, House, the plumbing and mechanical contractor, and Reinke Construction Corporation (Reinke), the masonry contractor, for whom Collins was employed as a bricklayer.

In order for Reinke to complete its contract with the hospital, a scaffold was constructed on the outside of the building to provide a platform for its bricklayers. Reinke employees, with the aid of Pepper employees, then placed visqueen (plastic sheeting) over the scaffold, attached it to the construction and lapped it over the top of the building to protect their work from adverse weather conditions. On November 20, 1992, Collins was positioned on the third level of the scaffold, laying brick, when a gust of wind inflated the visqueen, causing the boards and other objects which were holding the visqueen, to fall from the top of the scaffold. Upon seeing the falling objects and hearing a loud noise, Collins jumped from the

third-level platform through a second-story window of the building. Collins fell approximately six to eight feet and landed on a metal pipe left by House on the second floor where its employees had been working. As a result of the fall, Collins injured his left knee.

On April 18, 1994, Collins filed a complaint against House and Pepper, alleging that they had negligently caused his injuries. Approximately two years later, House filed a motion for summary judgment. Specifically, House claimed that it did not owe Collins a duty and, even assuming a duty, Collins' injuries were not proximately caused by any acts or omissions on the part of House. On June 17, 1996, Collins filed a response, opposing House's motion and designating evidence to demonstrate the existence of material issues of fact. Specifically, Collins contended that House owed him a duty to clean up its materials on a daily basis and to clear any debris from its work area. Collins further contended that whether House's alleged breach was the proximate cause of his injuries was a question for the trier of fact.

Pepper also filed a motion for summary judgment, contending that it did not owe Collins a duty and that its actions were not the proximate cause of Collins' injuries. Collins again responded by asserting genuine issues of material fact and designating supporting evidence. Among other things, Collins contended that Pepper owed him a duty to maintain a clean working environment and to ensure that House kept its work area clean. Collins also contended that Pepper employees had aided the Reinke employees in attaching the visqueen and that his injury was caused by Pepper's negligent failure to properly secure the visqueen to the scaffolding or building.

Following a hearing on September 18, 1996, the trial court took the matter under advisement and, thereafter, granted summary judgment in favor of both House and Pepper. In its order, the trial court found that only Reinke employees had constructed the scaffold and placed the visqueen. The court then concluded that neither House nor Pepper owed Collins a duty. The court further concluded that neither House's nor Pepper's acts were the proximate cause of Collins' injuries.

## I. Standard of Review

Summary judgment is appropriate if the moving party demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Once the moving party sustains the initial burden, the opposing party may not rest upon the pleadings, but must identify the genuine issues and designate any pleadings, depositions, answers to interrogatories, admissions and any other evidentiary matters on which it relies to stave off summary judgment. *Abbott v. Bates* (1996) Ind.App., 670 N.E.2d 916, 921, *reh'g denied.*

When reviewing the grant of summary judgment, we stand in the same position as the trial court. *Id.* Because a summary judgment proceeding is not an abbreviated trial, neither the trial court nor this court may weigh the evidence. *LeMaster v. Methodist Hosp. of Indiana, Inc.* (1992) Ind.App., 601 N.E.2d 373, 374, *reh'g denied.* Rather, we consider the facts in the light most favorable to the nonmoving party and may sustain the judgment upon any theory supported by the designated evidence. *Schilling v. Lafayette School Corp., Bd. of School Trustees* (1989) Ind.App., 537 N.E.2d 69, 70. We further note that this court is not permitted to search the record for or make its decision based upon materials which were not specifically designated to the trial court. *Babinchak v. Chesterton* (1992) Ind.App., 598 N.E.2d 1099, 1101–1102, *reh'g denied.*

We consider separately the entry of summary judgment as related to the two defendants.

## II. House

As a moving party, House bore the burden of demonstrating, prima facie, that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. In order to do this, House was required to demonstrate that the undisputed facts negated at least one element of the plaintiff's case. *See Goldsberry v. Grubbs* (1996) Ind.App., 672 N.E.2d 475, 477 (to prevail on a motion for summary judgment in a

negligence case, defendant must establish that the undisputed material facts negate at least one element of plaintiff's claim). Because Collins' complaint sounded in negligence, House was required to show that it did not owe Collins a duty, or that it did not breach a duty owed or that a breach, if any, was not a proximate cause of Collins' injuries. Accordingly, in its brief in support of its motion for summary judgment, House argued both that it did not owe Collins a duty and that any alleged breach of duty was not a proximate cause of Collins' injuries. In particular, House argued that it had no duty to maintain the construction site in a reasonably safe condition under a premises liability theory, that it did not owe Collins a common law duty of care because Collins was not a foreseeable victim and that its actions were not the proximate cause of Collins' injuries.

In response, Collins argued that House had contractually agreed to perform "housekeeping" in its respective work area. Specifically, Collins noted that according to House's contract with the hospital, House "agree[d] to clean-up [its] work on a daily basis with all rubbish deposited into dumpsters provided by Pepper" (Supplemental Record at 6)[1] and to "keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by opera-

tions under the Contract." Record at 57. Additionally, Collins noted that according to the contract terms, House was obligated to "take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to ... employees on the Work and other persons who may be affected thereby." Record at 58.

Collins also designated evidence to show that in its contract, House agreed to comply with all OSHA, Federal, State and local safety regulations.[2] In particular, Collins contended that House was required to comply with the housekeeping provisions of OSHA set forth in 29 C.F.R. § 1926.25[3] which provides that "[d]uring the course of construction, alteration, or repairs, form and scrap lumber with protruding nails, and *all other debris*, shall be kept cleared from work areas, passageways, and stairs, in and around buildings or other structures." 29 C.F.R. § 1926.25 (1998) (emphasis supplied). Based upon this designated evidence, Collins contended that House owed him a duty to clean up its materials on a daily basis and to keep its area cleared of debris[4] and, as a result, genuine issues of material fact existed regarding whether House breached these duties and whether House's act or acts were a proximate case of Collins' injuries.[5] How-

1. This provision was contained in the Trade Agreement which was noted as "Exhibit 1" and included as part of the contract between St. Vincent Hospital and House. *See* Article 7 of the Standard Form of Agreement Between St. Vincent Hospital And Health Care Center, Inc. and House ("The Contract Documents consists [sic] of this agreement, all exhibits attached hereto and made a part hereof ... ") Record at 41, 51.

2. House's agreement to comply with OSHA, federal, state and local regulations was contained in the "Safety Rules For All Contractors and Employees On St. Vincent Hospital and Health Care Center, Inc. Master Facilities Project" which House received prior to beginning its work under the contract. The record reveals that House signed a form acknowledging that it received a copy of the safety rules and specifically agreed to "read and abide by all rules and regulations in the handbook, and all OSHA, Federal, State and local regulations while on the jobsite." Record at 38, 47.

3. Part 1926 of Title 29 of the Code of Federal Regulations sets forth occupational safety and health standards for construction.

4. We note that the precise duty owed by House would depend upon whether the material on which Collins fell was new or waste material. Although in his deposition, Collins first stated that he believed the pipe on which he landed to be "scrap," he later described the pipe as "new material." Record at 31. Nevertheless, for the reasons stated in our discussion with respect to proximate cause, Collins may not prevail under either circumstance.

5. Specifically, Collins designated the following genuine issues of material facts: "(1) Whether House failed to clean up its work on a daily basis and all rubbish deposited in dumpsters as required by the Contracts with the Hospital; (2) Whether House failed to keep the premises and surrounding area free from accumulation of waste materials and rubbish caused by the operations as required by the Contracts with the Hospital; (3) Whether House complied with the Indiana Occupational Health and Safety Act ('State Act') in performing the Contracts with the Hospital; (4) Whether House complied with the Federal Occupational Health and Safety Act ('Federal Act') in performing the Contracts with the Hospital; [and] (5) Whether David's injury

ever, even assuming House was required to clean its area on a daily basis and remove all waste materials for the benefit of other employees, including Collins, and that House breached that duty by leaving pipes scattered on the floor, we conclude that House's alleged negligence was, as a matter of law, not a proximate cause of Collins' injuries.

■ In determining whether an act is a proximate cause of an injury, we consider whether the injury was a natural and probable consequence of the negligent act, which in light of the attending circumstances, could have been reasonably foreseen or anticipated. *Goldsberry, supra,* 672 N.E.2d 475, 479. Thus, the negligent act must set in motion the chain of circumstances which contribute to or cause the resulting injury. *See City of Portage v. Lindbloom* (1995) Ind.App., 655 N.E.2d 84, 86, *trans. denied.* However, if an independent agency intervenes between the defendant's negligence and the resulting injury, it may break the chain of causation. *Lutheran Hosp. of Indiana, Inc. v. Blaser* (1994) Ind.App., 634 N.E.2d 864, 871, *reh'g denied; Woods v. Qual–Craft Industries, Inc.* (1995) Ind.App., 648 N.E.2d 1198, 1202, *trans. denied.* The key to determining whether an intervening agency has broken the original chain of causation is to decide whether it was reasonably foreseeable under the circumstances that the agency would intervene in such a way as to cause the resulting injury; if the intervening cause was not reasonably foreseeable, then the original negligent actor is relieved of any and all liability resulting from the original negligent act. *Galbreath v. Engineering Const. Corp.,* (1971) 149 Ind.App. 347, 359, 273 N.E.2d 121, 128. Although the issue of proximate cause is often determined by the trier of fact, where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law. *See Straley v. Kimberly* (1997) Ind.App., 687 N.E.2d 360, 365, *trans. denied.*

was caused by House's acts of negligence that

■ According to House, the negligent installation of the visqueen, which set in motion the series of events which caused Collins to jump, was an intervening cause which broke the original chain of causation. House further contends that, because the intervening series of events could not have been reasonably anticipated by House, it was relieved of liability for any alleged negligent acts. We agree.

At the time of the incident, Collins was laying brick on the outside of the building, where the scaffold had been constructed, while House had been providing mechanical and plumbing services inside the building on the second floor. Thus, although it was foreseeable that House's failure to keep its work area clean might cause injuries to another worker laboring on or passing through the second floor area, it was not reasonably foreseeable that its alleged failure would cause injuries to a worker positioned on a scaffold on the outside of the building and forced by an emergency to jump through the second-story window. Because House could not have reasonably anticipated that the visqueen would have inflated and caused boards and other objects to fall onto the scaffold, it was relieved of any liability for the alleged negligent act.

Our conclusion is consistent with our holding in *Woods, supra,* 648 N.E.2d 1198, 1202. In *Woods,* an employee of a carpentry subcontractor, who was standing on a scaffold and performing carpentry work on the second floor of a residence, fell when the scaffold collapsed due to a faulty pump jack. The employee fell approximately twenty-five feet to the ground, where he landed on some concrete slabs, which had been left by the concrete subcontractor. The employee filed a negligence action against both Qual–Craft, the manufacturer of the pump jack, and the concrete subcontractor which, in turn, filed a motion for summary judgment which was granted by the trial court. Upon appeal, this court found that the subcontractor's act of leaving the concrete slabs on the ground was not the proximate cause of the employee's injuries because they were not reasonably foreseeable as the natural and probable con-

were foreseeable." Record at 15–16.

sequence of leaving the concrete slabs on the ground. *Id.* at 1202. We further held that the collapse of the scaffold was an unforeseeable intervening act which superseded any liability on the part of the concrete subcontractor. *Id.* As in *Woods,* Collins' injuries were not the natural and probable consequence of House's act of leaving pipe on the second floor. Rather, as stated above, the inflation of the visqueen, which caused Collins to jump, was an unforeseeable intervening cause.

Nevertheless, Collins contends that, based upon certain language contained in the contract between House and St. Vincent, House should have reasonably anticipated that Collins might be injured by the pipes left on the second floor. In particular, Collins refers to Article 10.2.1 of the "General Conditions of the Contract for Construction" which provides that House "shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to ... employees on the Work and *other persons* who may be affected thereby." Record at 58 (emphasis supplied). According to Collins, this language placed House on notice that workers, other than its employees, "might be in the area of House's work" and, therefore, it was foreseeable that Collins, as one of the other workers, would be injured by the pipe. Appellant's Brief at 16–17.

■ Although we agree that based upon the contract language, House should have anticipated that workers other than House employees might be injured by materials left on the floor by House we, nevertheless, cannot conclude that House should have anticipated every possible situation in which a worker might come into contact with the pipes. Determining whether an act is foreseeable under the doctrine of proximate cause always involves an evaluation of the particular circumstances surrounding the incident. *See Goldsberry, supra,* 672 N.E.2d at 479 ("Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the inci-

dent occurs."). Thus, we must take into consideration that Collins was working on a scaffold constructed on the outside of the building and that House was working inside the building on the second floor. It is clear under these circumstances that House could not have reasonably foreseen the chain of events which caused Collins to jump from the third level of the scaffold into the second-story window. Therefore, because any act on the part of House was not a proximate cause of Collins' injuries, the trial court properly entered summary judgment in favor of House.[6]

### III. *Pepper*

Pepper was also required to demonstrate, prima facie, that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. In support of its contention, Pepper also argued that it did not owe Collins a duty of care and that any alleged negligent act was not a proximate cause of Collins' injuries. Specifically, Pepper argued that it did not owe Collins a duty to maintain the construction site in a reasonably safe condition under premises liability, that it did not owe Collins a common law duty because Collins was not a reasonably foreseeable victim and that it did not owe Collins a contractual duty to maintain a safe working environment. In regard to the pipe, Pepper argued that it did not place it on the second floor, did not maintain control over the pipe or House and was not required to inspect the second floor for safety. Pepper also argued that it did not construct the scaffold or place the visqueen and was under no obligation to maintain the scaffold or inspect it for safety. Pepper further argued that Reinke remained responsible for the safety of its employees and property and agreed to comply with all federal, state and local statutes, rules, and regulations.

In response, Collins contended that Pepper owed him a duty under Pepper's contract with the hospital to "maintain[ ] a clean work environment at all times" and to "determine the adequacy" of House's compliance with its

---

6. It should be noted that our holding is not premised upon a conclusion that House owed no duty to Collins, but rather upon the foreseeability

component of proximate cause. *Goldsberry, supra,* 672 N.E.2d at 479.

housekeeping duties under OSHA. Record at 104,105. Collins further contended that a genuine issue of material fact existed in regard to whether Pepper employees negligently secured the visqueen to the scaffold.

■ Initially, we note that we again need not decide whether Pepper owed Collins a duty to clear away the pipe or ensure that House complied with its housekeeping duties under OSHA. Even assuming Pepper failed to ensure that the pipes were removed, that failure was not a proximate cause of Collins' injuries. Therefore, Pepper was entitled to summary judgment with regard to this precise issue. *See T.R. 56(C)* ("A summary judgment may be rendered upon less than all the issues or claims.").

■ However, we do not similarly find that Pepper was entitled to summary judgment upon its contention that it did not owe Collins a duty to maintain or inspect the scaffold for safety. According to Pepper, although it was contractually required to conduct safety training courses for subcontractor employees and to provide the contractors with a copy of the safety rules, it was not required to "make exhaustive or continuous inspections to check safety precautions and programs in connection with the Project." Supplemental Record at 3. Pepper further contended that Reinke was responsible for the safety of its employees and property and was not relieved of its duty to comply with federal, state and local statutes.

■ In order to determine whether a party is charged with a duty of care under a contract, we look to the contract as a whole by examining all of the provisions. *See Perryman v. Huber, Hunt & Nichols, Inc.* (1994) Ind.App., 628 N.E.2d 1240, 1244, *trans. denied,* (The meaning of a contract is determined by "examining all of its provisions, not from a consideration of individual words, phrases, or paragraphs alone."). Thus, whether a duty exists and "the extent of the duty owed" is a matter of contract interpretation. *Id.* We determine the intent of the parties as determined by the language of the contract. *Id.*

Initially, we note that only a few pages of Pepper's contract appear in the record and, within those few pages, only a few provisions are cited by Pepper in support of its argument. Based upon the designated evidence, we are able to determine that Pepper was charged with a specific contractual duty to establish and "maintain an overall safety program for the Project," to "review" Reinke's safety program and make recommendations and to appoint a safety officer to "enforce" the safety program. Supp. R. at 3. However, the contract language before us does not explain how Pepper's safety officer was to fulfill his obligations in enforcing the safety program or reviewing Reinke's safety precautions. Pepper contends that those duties included providing only "education and information," Pepper's Brief at 8, and cites to contract language which provides that it was not required to make *"exhaustive or continuous inspections to check safety precautions and programs in connection with the Project"* (emphasis supplied). Supplemental Record at 3. However, this language does not exclude the possibility that Pepper may have been required to inspect the various trade contractors' equipment at some time during the course of the construction.[7] Thus, based upon the contract language cited by Pepper, we cannot conclude that the parties intended that Pepper's obligations would stop at conducting safety meetings and providing rules to the trade contractors and specifically did not include a duty to maintain or inspect the scaffold.

■ Furthermore, even assuming that Reinke had a duty to provide for the safety of its employees, to comply with safety regulations and to inspect the scaffold, Pepper was not precluded from also assuming this duty. *See Perryman,* 628 N.E.2d at 1245 (merely because subcontractor assumes a duty in its contract for benefit of third party does not in any way alter construction management company's duty for third party's protection under its contract). Nonetheless,

---

7. In fact, the safety rules, which were allegedly given to every Trade Contractor, noted that "[w]hen unsafe conditions or practices are observed by the Pepper superintendent, the Trade Contractor foreman will be requested to correct them." Record at 45.

we are unable even to make that determination because the Reinke/St. Vincent contract is not included in the record. Thus, without having Reinke's contract or the remaining pages of Pepper's contract before us, we are unable to determine the extent, if any, of Reinke's duties to maintain or inspect the scaffold and to ensure the safety of its employees and whether Pepper's duties to "review" Reinke's safety program, and to "maintain" and "enforce" the overall safety program included a duty to inspect the scaffold.[8] Although we are mindful that Pepper was required to designate only those materials on which it relied to support its contentions, based upon the contract language before us, Pepper did not sustain its burden of demonstrating that it did not owe Collins a duty to maintain or inspect the scaffold. Therefore, Pepper was not entitled to summary judgment upon this issue.[9]

▰ Furthermore, we conclude that a genuine issue of material fact exists regarding whether Pepper assumed a duty to ensure that the visqueen was safely and properly attached to the scaffolding and building. In a case where a party would not otherwise have a duty, that party may assume a duty either gratuitously or voluntarily. *Plan–Tec, Inc. v. Wiggins* (1983) Ind.App., 443 N.E.2d 1212, 1219. Once a party undertakes a duty, it must fulfill that duty in a reasonably prudent manner. *Id.* Whether a party assumes a duty and the extent of that duty are questions for the trier of fact. *Id.* at 1220.

▰ In his motion opposing summary judgment, Collins designated that part of his deposition in which he stated that he ob-

served "Pepper people and Reinke people" attaching the visqueen to the scaffold. Record at 89. Collins also contended that the "visqueen exploded" because it was improperly attached to the scaffolding. Record at 94. Pepper, however, denied that it was involved in attaching the visqueen. Based upon Collins' designated evidence, a genuine issue of fact exits regarding whether Pepper assumed a duty to attach the visqueen and the extent of that duty. If the trier of fact were to conclude that Pepper employees assumed some degree of control over the application of the visqueen, they were negligent in doing so, and their breach was a proximate cause of Collins' injuries, Collins would be entitled to judgment in his favor. Thus, the trial court erroneously weighed the evidence when it concluded that "[b]oth the scaffold and visqueen were constructed by employees of Reinke." Record at 257.

In conclusion, we affirm the grant of summary judgment in favor of House because, as a matter of law, House's alleged negligent act of leaving the pipe was not a proximate cause of Collins' injuries. Pepper was also entitled to partial summary judgment upon this basis. However, Pepper did not demonstrate, as a matter of law, that it did not have a duty to inspect or maintain the scaffold. Finally, we conclude that, because a genuine issue of material fact exists regarding whether Pepper assumed a duty of care with respect to installation of the visqueen, we remand for further proceedings not inconsistent with this opinion.

HOFFMAN, Sr. J., concurs.

8. Although the excluded contract language might shed light upon the extent of these duties, we do not have it before us. Further, if the meaning of the terms cannot be sufficiently discerned from the omitted contract language, they may be deemed ambiguous which would require the submission of extrinsic evidence. *See Plumlee v. Monroe Guar. Ins. Co.* (1995) Ind.App., 655 N.E.2d 350, 354, *trans. denied,* (where ambiguity in a written contract can only be determined by extrinsic evidence, summary judgment is inappropriate).

9. Our review of other contract language contained in the pages designated by Pepper, reveal that Pepper contractually agreed to "provide experienced personnel to monitor compliance by

all Trade Contractors and suppliers with the applicable OSHA and EEO requirements." Record at 105. Further, our research reveals that 29 C.F.R. § 1926.450 sets forth numerous safety requirements with respect to scaffolds. Thus, depending upon the nature of Reinke's obligations under this section, and the extent of Pepper's duty to "monitor" Reinke's compliance with OSHA, Pepper also could be potentially liable to Collins upon this basis. *See Perryman, supra,* 628 N.E.2d at 1244 (construction manager is potentially liable to employee of subcontractor where construction manger contractually agrees to require subcontractors to comply with OSHA regulations).

SHARPNACK, C.J., concurs in part and dissents in part with separate opinion.

SHARPNACK, C.J., concurring in part and dissenting in part.

I concur in the majority's conclusion that Pepper was not entitled to summary judgment on the issue of whether it had assumed a duty to inspect and maintain the scaffold. The designated evidence reveals a clear dispute of fact as to whether Pepper employees were involved in the installation of the visqueen.

However, I respectfully dissent from the majority's conclusion that the failure of House to remove the pipe from their work area was not, as a matter of law, a proximate cause of Collins's injury. The majority correctly states that the issue of proximate cause is generally determined by the trier of fact. *Perryman v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240, 1245 (Ind.Ct.App. 1994), *trans. denied.* Nevertheless, the majority concludes that this case involves a situation "where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified." As a result, the majority holds that House's act of leaving the pipe in the area was not a proximate cause of Collins's injury as a matter of law. I disagree.

Considering the facts most favorable to Collins, House left scrap pipe in its work area although it had contractually agreed to maintain the work area clear of debris.[10] The foreseeable risk from the breach of this duty would certainly include someone either tripping over the pipe, falling on the pipe, or experiencing some other unfortunate contact with the pipe. This is, in fact, the type of accident that produced Collins's injury.

Nevertheless, the majority concludes that the negligent installation of the visqueen on the scaffold was an intervening cause which broke the chain of causation thereby relieving House of liability. I believe the majority has misapplied this doctrine to the facts of this case. In *Lutheran Hosp. of Indiana, Inc. v. Blaser,* this court explained that "[t]he question of proximate cause depends upon whether the independent, negligent act could have been reasonably expected under the circumstances to intervene in such a way as to likely produce *an injury similar to the one that occurred.*" *Lutheran Hosp. of Indiana, Inc. v. Blaser,* 634 N.E.2d 864, 871 (Ind.Ct.App.1994) (emphasis added), *reh'g denied.* In other words, the original tort feasor is relieved of liability for an injury where the subsequent negligent act was outside the original tort feasor's scope of foreseeable risk. *Id.* at 872. To illustrate the subtleties of this rule, the *Lutheran* court compared the facts of two cases where proximate cause was found to be absent:

> "In *Crull,* the manufacturer risked an electrical fire, the plaintiff suffered a gas explosion after the repair person failed to connect the gas line; in *Walker,* the landowner's [sic] risked a car hitting the cow; the plaintiff suffered a car hitting another car. However, in the case at bar, Lutheran created an unsafe condition, and risked a car hitting a pedestrian at the 'exit' of the parking lot. This was precisely the accident which occurred, thus the conduct [hit-and-run driver] which produced Blaser's injuries was within Lutheran's scope of foreseeable risks."

*Id.* at 872 (comparing *Crull v. Platt,* 471 N.E.2d 1211 (Ind.Ct.App.1984), *reh'g denied, trans. denied,* and *Walker v. Jones,* 511 N.E.2d 507 (Ind.Ct.App.1987)). Applying this reasoning to the facts here, Collins's injury was foreseeable not because House was expected to anticipate that someone would enter the building through the window opening because of billowing visqueen, but because House, by not keeping the area free

---

10. Because the majority disposed of the issue of negligence by concluding that Collins's claim failed on the proximate cause element, it did not resolve the issue of whether House and Pepper had a duty to Collins under these facts. Considering the provisions in the hospital's contracts with House and Pepper regarding housekeeping, safety, and OSHA standards, I would hold that both House and Pepper had a contractual duty to Collins to keep House's work areas clean. *See Perryman,* 628 N.E.2d at 1244 (holding that where the contract affirmatively shows the parties' intent to charge one party with a duty of care, actionable negligence may be predicated upon that contractual duty).

of debris, created a risk that someone would suffer injury by coming into contact with the scrap pipe.[11]

The majority cites *Woods v. Qual–Craft Indus., Inc.,* as support for its conclusion that proximate cause is absent here. *Woods v. Qual–Craft Indus., Inc.,* 648 N.E.2d 1198 (Ind.Ct.App.1995). I find *Woods* to be distinguishable from this case in that the concrete slabs left uncovered in the dug out area were placed there before the scaffold was erected. Thus, the risk of someone falling from a high altitude and onto the slabs was not foreseeable at the time the concrete slabs were left. In the present case, the risk of harm that someone would fall on the pipe would be present even before the bricklayers installed their scaffold because the risk was not that someone would fall from the top of a scaffold but that someone would fall on the pipe. Therefore, although subtle, this factual distinction renders *Woods* illustrative but ultimately inapplicable to the proximate cause analysis in this case.

In sum, I disagree with the majority's holding that the lack of foreseeability in this case is so clear that it necessitates a holding that there is no proximate cause as a matter of law. This issue is best determined by the trier of fact following a thorough consideration of all of the relevant facts and surrounding circumstances. Therefore, I would reverse the trial court's grant of summary judgment with respect to both House and Pepper on this issue.

11. Although I do not think the manner in which Collins came to fall on the pipe in this case is determinative, I cannot say from the designated evidence that is was unforeseeable that someone working on the exterior of a building on a scaffold would enter the building, because of an emergency or otherwise, through a window opening. Clearly, when the structure of a scaffold several levels high becomes unstable, entering the building through such an opening might be the only obvious escape route. Based on the designated evidence before us, I conclude that it was not unforeseeable that brick layers working on an exterior scaffold would use a window opening as a means of ingress or egress, thereby exposing them to scrap pipe left by a contractor working on that floor.