Matthew **MANGOLD**, a minor, by his next friend, Michael **MANGOLD**, Appellant–Plaintiff,

v.

**INDIANA DEPARTMENT OF NATURAL RESOURCES** and **Switzerland County School Corporation**, Appellees–Defendants.

No. 78A01–9903–CV–88.

Court of Appeals of Indiana.

Dec. 3, 1999.

Rehearing Denied Jan. 24, 2000.

Gary K. Kemper, Kemper & Barlow, Madison, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General of Indiana, Danford R. Due, Leslie A. Behrman, Stewart Due Doyle & Pugh, LLP, Indianapolis, Indiana, Attorneys for Appellees.

**OPINION**

RILEY, Judge

*STATEMENT OF THE CASE*

Appellant Matthew (Matthew) Mangold appeals the denial of his complaint for damages against the Indiana Department of Natural Resources (DNR) and the Switzerland County School Corporation (School). Summary Judgment was entered in favor of the DNR and the School.

We affirm.

*ISSUES*

Matthew raises four issues for our review, two of which we find dispositive and restate as:

(1) Whether the School owed a duty to Matthew.

(2) Whether the DNR was immune from suit pursuant to Ind.Code § 34–13–3–9(9).

*FACTS AND PROCEDURAL HISTORY*

On March 12, 1997, Conservation Officer John Groover of the DNR taught part of a hunter education course in the Switzerland

County Middle School. He instructed on ammunition, rifles and shotguns. The hunter education course was an approved part of the science curriculum and Matthew attended this course as part of his science class. While he was instructing Matthew's class, Officer Groover proceeded to take apart a shotgun shell to demonstrate the four different constituent parts of a shell. Officer Groover also admonished Matthew's class to never "handle ammunition unless accompanied by an adult or an instructor." (R. 150).

Later in the day after school, Matthew took apart one of his father's shotgun shells with his brother. Matthew's brother held the shell with vice grips and Matthew took a hammer and chisel and struck the shell once. Matthew struck the shell again and the shell exploded with a fragment striking Matthew in his left eye, blinding him in that eye.

Matthew filed his complaint for damages on January 7, 1998 against both the DNR and the School. The School filed its motion for summary judgment on October 6, 1998, and the DNR filed its motion for summary judgment on September 8, 1998. The trial court granted both the DNR's and the School's motions for summary judgment on February 11, 1999.

## DISCUSSION AND DECISION

### Standard of Review

This case comes before us on a grant of summary judgment from the trial court. A grant of immunity under the Indiana Tort Claims Act (ITCA) and the determination of a duty are both questions of law and are subject to a de novo standard of review. *Delta Tau Delta v. Johnson,* 712 N.E.2d 968, 971 (Ind.1999); *Joseph v. LaPorte County,* 651 N.E.2d 1180, 1183 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party bears

the burden of showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Miller v. NBD Bank, N.A.,* 701 N.E.2d 282, 285 (Ind.Ct.App. 1998). Once this burden has been sustained, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations or denials in the pleadings. *Id.*

In reviewing a decision upon a summary judgment motion, we are to apply the same standard as the trial court. *Id.* We are to review only the designated evidentiary material in the record and construe that evidence liberally in favor of the non-moving party. *Id.* Our role is to carefully scrutinize the trial court's determination so as not to deny the non-moving party its day in court. *Id.*

### Duty of School

Matthew contends that the trial court erred when it granted the School's motion for summary judgment finding that the School owed no duty to Matthew. Specifically, Matthew argues that the trial court erred when it noted in its entry of summary judgment that the School owed no duty to Matthew because Matthew was at home when the accident occurred, Matthew was not under the supervision of the School when he was at home, and Matthew obtained no unreasonably dangerous instrumentality from the School.

Summary judgment is rarely appropriate for negligence actions, but issues of duty are questions of law for the court. *Brewster v. Rankins,* 600 N.E.2d 154, 156 (Ind.Ct.App.1992). To establish negligence, a plaintiff must first meet the threshold issue of a duty owed to the plaintiff. *Id.* at 157. Schools have a special responsibility recognized by common law to supervise their students, owing to the fact that children have characteristics that make it likely that they may do unreasonable things. *Miller v. Griesel,* 261 Ind.

604, 308 N.E.2d 701, 706 (1974). While school authorities have a special duty to exercise reasonable care and supervision for the safety of children under their care, schools are not intended to be insurers of the safety of their students. *Swanson v. Wabash College,* 504 N.E.2d 327, 330 (Ind. Ct.App.1987). However, if a school provides one of its students with an unreasonably dangerous instrumentality, then there is the imposition of a duty on teachers and schools regardless of the environment in which it was used. *Brewster,* 600 N.E.2d at 158.

■ The facts most favorable to Matthew as the non-moving party reveal that the trial court did not err when it granted the School's motion for summary judgment because no duty was owed to Matthew by the School. Matthew was at home when the accident occurred and not at school, and thus, he was not under the supervision of the School or its representatives. Additionally, while it could be argued that a shotgun shell is an inherently dangerous instrumentality, the fact remains that unlike *Brewster,* where the instrumentality was provided by the school, in this case, the School educated Matthew about the components of a shotgun shell, but never provided Matthew with a shotgun shell to take home. Instead, Matthew got the shell at home from his father's supply.

In *Miller,* a fifth grade student was injured by a detonator cap that exploded during recess. 308 N.E.2d at 704. He sued the school on a negligence theory arguing that the school failed to use due care to provide reasonable supervision. *Id.* at 703. The Indiana Supreme Court held that schools have a special duty to supervise their students because of children's peculiar characteristics to do unreasonable things. *Id.* at 706. The court also held that the duty to exercise care arises as a matter of law out of a relationship existing between the parties and that the court is to determine whether such a relationship exists. *Id.*

In *Brewster,* a fourth grade student injured another child when he struck him in the head with a golf club while he was practicing his swing at his home. 600 N.E.2d at 156. The golf club was provided by the student's school and the parents of the injured child attempted to sue the school under a negligence theory, claiming that the school failed to instruct, train and supervise the student. *Id.* This court found that the parents failed to establish that the school owed the injured child a duty. *Id.* at 157. We recognized that almost all Indiana cases that dealt with the duties that a school owes to its students occur on school property. *Id.* Additionally, this court found that the only case that it could find that dealt with an issue of negligence off of school property, *Swanson,* established that a school has no duty to supervise recreational athletic practices off school premises. *Id.* at 158. Finally, we found that a golf club is not an unreasonably dangerous instrumentality imposing a duty on the school regardless of where it is used. *Id.* at 158

■ While *Brewster* and *Swanson* dealt with athletic type of activities that occurred off of school property, the fact remains that like those cases, Matthew's activity occurred off of school property as well. While a school does have a special duty to supervise its students owing to their peculiar characteristics, that duty cannot extend to what a child does in the privacy of his own home. Matthew was not under the supervision of the school when he was at his home. The School gave him no written instructions or supervision at his home to take apart a shotgun shell. Additionally, Matthew himself stated in an affidavit that he got the idea to hit the shotgun shell with a hammer and chisel from his own head and not from what he learned at school.

Unlike *Miller,* where the alleged injury occurred on school property, Matthew's injury occurred at his home and not on school property. Nonetheless, *Miller* established that a duty to exercise care

arises out of a relationship between the parties. However, no relationship existed between Matthew and the School at the time of Matthew's injury because Matthew was injured at his home and not at school.

Furthermore, unlike *Brewster*, Matthew did not receive the dangerous instrumentality of the shotgun shell from the School. Rather, Matthew got a shell from his father's ammunition stored in the home. Also, Matthew did receive instructions about ammunition, rifles, and shotguns specifically pertaining to the safe handling of ammunition, the difference between rifles and shotguns, the difference between ammunition, safe handling of rifles and shotguns, safe storage of ammunition, and finally the mechanics of gun firing. However, Matthew attempts to argue that the instructions he received from Officer Groover about shotguns shells in and of themselves were an inherently dangerous instrumentality.

■ What makes an object inherently dangerous is that the danger is part of the constitution of the instrumentality or condition at all times, and not the fact that the information about an object describes it as possibly being inherently dangerous. *Neal v. Home Builders Inc.*, 232 Ind. 160, 111 N.E.2d 280, 287 (1953). While it could be argued that a shotgun shell is inherently dangerous, and a duty would exist no matter where the accident occurred, the School did not provide Matthew with the shotgun shell, and thus, has no duty owing to the possible inherently dangerous characteristics of a shotgun shell.

Thus, the evidence most favorable to Matthew as the non-moving party supports the trial court's finding that the School owed no duty to Matthew. Since we do not find the type of relationship required by Indiana law that would rise to the level of a duty owed to Matthew by the School, the School's motion for summary judgment was properly granted.

*Immunity of the DNR*

Matthew contends that the trial court erred when it granted the DNR's motion for summary judgment finding that the DNR was immune from suit pursuant to Ind.Code § 34–13–3–3(9). Ind.Code § 34–13–3–3(9) provides: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from: . . . (9) the act or omission of anyone other than the governmental entity or the governmental entity's employer." Ind.Code § 34–13–3–3(9). Specifically, Matthew argues that the trial court erred when it found that the DNR was immune from suit due to Matthew's negligence in striking the ammunition and his father's negligence in allowing unsupervised access to live ammunition.

■ A governmental entity may be held liable for torts committed by their agencies and employees, but the ITCA protects the government from liability if the governmental conduct falls within certain statutory exceptions. *Serviss v. State*, 711 N.E.2d 95, 98 (Ind.Ct.App.1999). Any party seeking immunity under the ITCA has the burden of establishing that its conduct falls within the enumerated exceptions. *Id.* However, when a governmental entity is a defendant in a negligence action, unless the plaintiff alleges that the governmental entity engaged in an affirmative act of negligence that created the plaintiff's situation, the plaintiff must prove that a special relation exists between the parties. *Id.* A governmental entity that claims immunity from suit under subsection nine (9) of the ITCA can only claim that immunity when the alleged governmental liability is grounded upon the acts or omissions of persons other than the government employees acting within the scope of the employee's conduct. *Hinshaw v. Bd. of Comm'rs of Jay County*, 611 N.E.2d 637, 640 (Ind.1993). The principle of contributory negligence can be invoked to act as a complete bar to recovery in actions brought under the ITCA. *Town of Highland v. Zerkel*, 659 N.E.2d 1113,

1120 (Ind.Ct.App.1995), *trans. denied.* Contributory negligence is the principle whereby a person fails to exercise for his safety the degree of care and caution which an ordinary and reasonable person in a similar situation would exercise. *Id.* at 1121.

Additionally, to determine whether an act is a proximate cause of an injury, the trier of fact considers if the injury was a natural and probable consequence of a negligent act, which in light of the circumstances could have been reasonably foreseen. *Collins v. J.A. House, Inc.,* 705 N.E.2d 568, 573 (Ind.Ct.App.1999), *trans. denied.* If an intervening agency has broken the chain of causation because it would not be reasonably foreseeable that the agency would intervene to cause injury then the original negligent actor is relieved of any and all liability resulting from the original negligent act. *Id.* While the issue of proximate cause is normally determined by the trier of fact, proximate cause can be found as a matter of law if it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified. *Id.*

The facts most favorable to Matthew as the non-moving party reveal that the trial court did not err when it found that the DNR was immune from suit pursuant to Ind.Code § 34–13–3–3(9), due to the negligence of Matthew striking the shotgun shell and Matthew's father allowing unsupervised access to live ammunition.

Matthew alleges that the DNR is negligent because Officer Groover: 1) provided instruction on subject matter that was inherently dangerous, 2) failed to provide accurate and truthful information about shotgun shells, and 3) failed to provide warnings as to the danger of replicating what was learned at the demonstration. Since Matthew alleges that the DNR engaged in the affirmative act of giving improper instructions, Matthew did not have to prove that a special relationship existed between himself and the DNR. Thus, the class taught by Officer Groover was the affirmative act that created a private duty.

However, the DNR argues that it is immune from suit pursuant to Ind.Code § 34–13–3–3(9), based on the act or omission of anyone other than the DNR or its employee, Officer Groover. Matthew's complaint alleges that because of the negligence of Officer Groover in instructing Matthew's class, Matthew was harmed. Part of the duties of a conservation officer is instructional teaching. Matthew's complaint is founded upon acts of Officer Groover within the scope of his employment for the DNR, and therefore, the DNR can properly assert its immunity claim under subsection nine (9) of the ITCA.

The facts most favorable to Matthew reveal that the intervening negligent acts of Matthew striking a shotgun shell with a hammer and Matthew's father leaving live ammunition in his home unsupervised were not foreseeable and relieves the DNR of any and all liability from Matthew's accident. Although Officer Groover took apart a shotgun shell giving the class instruction about the constituent parts of shotgun shells, he did not expressly demonstrate how to dismantle a shotgun shell. Additionally, Officer Groover told Matthew's class to never use ammunition without adult supervision and never demonstrated striking a shotgun shell with a hammer as part of his instruction to the class. It was also not foreseeable that Matthew's father would leave live ammunition around Matthew's home unsupervised. Thus, it is clear from the record that Matthew's injury was not foreseeable under the circumstances because of the contributory negligent actions of both Matthew and his father, and as a matter of law we find that the DNR did not cause Matthew's injury. Because both Matthew and his father were contributory negligent, their negligence acts as a complete bar against recovery from the DNR.

Thus, the evidence supports the trial court's finding that the DNR was immune from suit pursuant to Ind.Code § 34–13–3–3(9). Therefore, the DNR's motion for summary judgment was properly granted.

## CONCLUSION

The trial court did not err when it granted both the School's and the DNR's motion for summary judgment, because the School did not owe a duty to Matthew, and the DNR was immune from suit pursuant to Ind.Code § 34–13–3–3(9).

Affirmed.

KIRSCH, J., and SHARPNACK, C.J., concur.