**LUTHERAN HOSPITAL OF INDIANA, INC., Appellant–Defendant,**

v.

**Joy Lee BLASER and Glen E. Blaser, Appellees–Plaintiffs.**

No. 02A04–9307–CV–247.

Court of Appeals of Indiana, Fourth District.

June 15, 1994.

Rehearing Denied Aug. 16, 1994.

JOHN F. LYONS, Barrett & McNagny, Fort Wayne, for appellant.

Roger Wm. Bennett, Brent E. Clary, Bennett, Boehning, Poynter & Clary, Lafayette, for appellees.

RILEY, Judge.

Defendant–Appellant Lutheran Hospital of Indiana, Inc. (Lutheran) appeals from a judgment in favor of Plaintiffs–Appellees Joy Lee Blaser and Glen E. Blaser for injuries suffered by Joy Lee Blaser (Blaser) in the driveway of Lutheran's parking facility.

We affirm.

## ISSUE

Lutheran presents seven issues for our review which we rephrase as follows:

1. Did the trial court err by finding that Lutheran owed a duty of reasonable care to Blaser?

2. Did the trial court err by refusing Lutheran's Tendered Instruction No. 6 and giving Final Instruction Nos. 11 and 12?

3. Was the jury's damage award excessive?

## FACTS

Lutheran is a health care facility located in Fort Wayne. It is served by a parking facility (parking lot) located east of the hospital across Fairfield Avenue, a two-lane city street, and bounded on the south by Downing Avenue and on the north by Home Avenue.

Early in December 1990, Blaser and her husband, Glen, drove to Lutheran where Glen was to be admitted as a cardiac patient. They entered the parking lot from Fairfield Avenue although this opening is designated an "exit." After they parked their car, Blaser and Glen crossed Fairfield Avenue mid-block in order to reach the hospital entrance.

After Glen was admitted, Blaser returned to her car again crossing Fairfield Avenue mid-block. Each day she visited Glen, Blaser parked in the same parking lot and crossed to and from the hospital at the same place.

On December 6, 1990, Glen had cardiac surgery and Blaser stayed at Lutheran until approximately 10:00 p.m. at which time she left the hospital and walked toward Fairfield Avenue. When she reached the street, she looked to her right and saw a car approaching at some distance. She crossed the street and as she was walking up the driveway of the parking lot, she was struck by a vehicle as it turned into the driveway. The identity of the vehicle's driver is unknown.

Blaser was taken back to Lutheran where she remained for 44 days. Her injuries included multiple fractures to her hip, bruises, abrasions, and disfiguring swelling in her hip area. She injured her knee, and had swell-

ing and bleeding on her face. Because of other medical conditions, medication was necessary to counteract any blood clots that might occur secondary to her bedridden state. Following her release from the hospital, Blaser was unable to care for herself and her husband for six months. She used a walker for five months, and has used a cane thereafter. A 1992 x-ray revealed degenerative changes in her lumbosacral spine and hip, and the presence of a fracture fragment which remained rotated out of shape. Blaser also suffers psychological problems as a result of her injuries and has sought counseling at the request of her physician.

On October 11, 1991, Blaser and her husband filed a complaint against Lutheran alleging eight theories of negligence against the hospital. After a trial, the jury returned a verdict and the judge entered a judgment in favor of Blaser and her husband in the amount of $535,000.00, from which Lutheran now appeals.

## DISCUSSION [1]

### I. Duty

■ Lutheran contends that the trial court erred when it found that Lutheran had a duty to Blaser when she was struck by a car in the parking lot's driveway, a right-of-way over which Lutheran alleges it did not control and only had a duty to maintain. We do not agree.

■ The conduct of the defendant gives rise to an action in negligence only when the defendant owes a duty to the plaintiff to exercise care, the determination of which is a question of law. *Bearman v. University of Notre Dame* (1983), Ind.App., 453 N.E.2d 1196, 1198; *McAdams v. Dorothy Edwards Realtors* (1992), Ind., 604 N.E.2d 607, 611. Absent a duty owed to the plaintiff by the defendant, there can be no actionable negligence. *Fawley v. Martin's Supermarket* (1993), Ind.App., 618 N.E.2d 10, 12, *trans. denied.* The relationship of Lutheran and Blaser was that of landowner and business invitee. Thus, Lutheran had a duty to exercise reasonable care for her protection. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639, *reh'g denied.*[2]

■ Lutheran contends that its general duty to exercise reasonable care to its invitees, including Blaser, does not include protecting Blaser from a hit-and-run driver whose conduct "could hardly be deemed foreseeable." Appellant's Brief at 28. Although a business invitor is not the insurer of its invitees' safety, Lutheran had a duty to guard against subjecting Blaser to dangers of which Lutheran was cognizant of or might have reasonably foreseen. *Fawley,* 618 N.E.2d at 13. The invitor has a duty to exercise reasonable care to discover defects or dangerous conditions on the premises, and he will be charged with knowledge of, and held liable for injuries which result from, any dangerous condition which he could have discovered in the exercise of reasonable care. *Verplank v. Commercial Bank of Crown Point* (1969), 145 Ind.App. 324, 334, 251

---

1. Throughout its Appellant's Brief, Lutheran suggests that whether Blaser was struck while still in the street or while she was walking on the driveway into Lutheran's parking lot remains a question before this court. *See, e.g.,* Appellant's Brief at 2, 11, 12, 15 & 23. Because this appeal is from a general judgment, our standard of review requires that we affirm if there is any legal theory upon which the trial court's action can be sustained. *Llewellyn v. Beasley* (1981), Ind.App., 415 N.E.2d 789, 792. The legal theory upon which we sustain the trial court's actions is best supported by the facts presented above. These facts are amply supported by the evidence of record; thus, we decline to review the following issues as if Blaser was struck while she was still crossing Fairfield Avenue, looking only at the propriety of the trial court's actions assuming Blaser was struck while she was on the parking lot's driveway.

2. Our supreme court in *Burrell* defined a landowner-invitor's duty to an invitee:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

 (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

 (c) fails to exercise reasonable care to protect them against the danger."

*Burrell,* 569 N.E.2d at 639–640 (quoting Restatement (Second) of Torts § 343 (1965)).

N.E.2d 52, 58. In addition, an invitor's duty to exercise reasonable care includes a duty to provide a safe and suitable means of ingress and egress, and may extend to warning of or protection from a danger that originates from third persons. *Bearman,* 453 N.E.2d at 1198.

■ The evidence at bar indicates that Lutheran is on the west side of Fairfield Avenue while its parking lot is on the east side. In the middle of the east side of the hospital and facing the parking lot is a circular driveway, a covered canopy entrance, good lighting, an auxiliary entrance, and a guard booth. No other entrance to the hospital is as conspicuous as this one although Lutheran does not regard this as its main entrance.

Pedestrian invitees parking in the parking lot necessarily cross Fairfield Avenue usually mid-block coming in and out of the hospital by means of the canopy entrance. Pedestrian invitees do not usually use the marked and lighted intersections with crosswalks on the north and south ends of Fairfield Avenue. When one of the crosswalks was constructed, Lutheran assured the city engineer that it would discourage people from using the canopy entrance doors as an entry and exit to the hospital; however, virtually nothing had been done inside the hospital towards this end or to direct pedestrians to the crosswalks.

Outside, visual cues draw pedestrians to cross mid-block at the circular drive in front of the canopy entrance. Concrete pads, in addition to the sidewalk and drive way, accommodate pedestrians and vehicles. Adjacent to the circular drive there is a paved surface like a sidewalk going to the edge of the sidewalk to prevent vehicles and pedestrians from tearing up the yard. On the parking lot side of the street and opposite the hospital entrance, there is another concrete pad which serves the tractor-trailers which turn into the parking lot, but which also serves pedestrians crossing to and from Lutheran. Neither the parking lot attendants nor security guards try to dissuade pedestrians from crossing Fairfield Avenue mid-block.

On the east side of Fairfield Avenue, back from the drive way leading into the parking lot is a guard house which is well illuminated and of a shape associated with the entrance and exit of parking lots. On top of the guard house is a large and well-lit sign with a large arrow pointing into the parking lot and captioned "Purchasing 2905 Warehouse." To approaching vehicles on Fairfield Avenue, this sign, the driveway and guardhouse appear as part of the parking lot's entrance. However, the Fairfield Avenue "entrance" is for delivery trucks only, and is an "exit" for automobiles. An automobile driver cannot tell that this is an "exit" until he is alongside it or starting to turn into the driveway.

Each night three or four automobiles mistakenly turn into the Fairfield Avenue "exit," while others begin to turn in, catch their mistake, and leave on their own. Both the Blasers and Mr. Sobeck, a forensic engineer hired by Blaser, inadvertently turned into the "exit" when first arriving at the parking lot.

From this evidence, the factfinder could infer that automobiles were turning into the "exit" driveway of the parking lot with the mistaken idea that it was an entrance, and pedestrians were crossing mid-block on Fairfield Avenue and walking into the "exit" driveway towards their cars. This funnelling of pedestrian and vehicular traffic into the drive way of the parking lot created a dangerous condition that Lutheran was either cognizant of or should have reasonably foreseen. The accident which occurred, that is, Blaser struck from behind by an automobile turning into the parking lot "exit" while she was walking on its drive way, was precisely the result of the dangerous condition which Lutheran should have foreseen. Thus, this accident was sufficiently foreseeable to require Lutheran to protect its invitees from such an unfortunate mishap.

Lutheran relies on *Fawley,* 618 N.E.2d 10, which held that an invitor owes no duty to invitees to protect them from runaway vehicles in parking lots, since this kind of occurrence is not sufficiently foreseeable for the invitor to be required to protect against it. *Id.* at 13. However, that case can be distinguished from the one before us. In *Fawley,*

patrons of a supermarket were struck by an automobile driven by a drunk driver. *Id.* at 11. The automobile was driving through the supermarket's parking lot when the driver lost control; the car jumped a curb, went onto the sidewalk, and struck pedestrians. *Id.* In explaining why this accident was not sufficiently foreseeable as a matter of law Judge Hoffman quoted from a Florida decision:

> In a sense all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary and normal course of events. When they happen, the consequences resulting therefrom are matters of chance and speculation.... Such occurrences fall within the category of the unusual or extraordinary, and are therefore unforeseeable in contemplation of the law.

*Id.* at 13–14 (quoting *Schatz v. 7–Eleven* (1961), Fla.App., 128 So.2d 901, 902).

In the case at bar, the evidence is not that an automobile acting in an unusual or extraordinary manner hit Blaser, but rather, that an automobile turned into the driveway of the "exit" just like other vehicles did each day and hit a pedestrian who crossed midblock and walked onto the driveway of the "exit," just as pedestrians did each day. The occurrence was in the ordinary and normal course of events, an incident to the ordinary operation of an automobile, and thus, not governed by the holding of *Fawley.*

 Relying on *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216, *reh'g denied,* Lutheran also argues that it had no duty to Blaser because the accident occurred on a public right-of-way over which it had no control. A landowner or business enterprise does not normally affect risks outside its boundaries; consequently, it is not normally responsible for injuries suffered on abutting property. *Ember v. B.F.D., Inc.* (1986), Ind. App., 490 N.E.2d 764, 772, *modified on denial of reh'g,* 521 N.E.2d 981, *trans. denied.* An invitor's duty normally extends only to its "premises," *Id.,* and the owner of commercial premises adjacent to a public highway usually owes no duty to invitees injured while walking upon or along the highway. *Flanigan,* 489 N.E.2d at 1218–1219. However, this court has recognized that "premises" may not be limited to the area actually owned by a invitor when its business activities extend beyond its legal boundaries. *Ember,* 490 N.E.2d at 772. When the activities conducted on the business premises affect the risk of injury off the premises, the landowner may be under a duty to correct the condition or guard against foreseeable injuries. *Id.* "A duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe that the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation." *Id.* (citations omitted). The standard of care for carrying out an activity is no different from that for maintaining property. *Martin v. Shea* (1984), Ind., 463 N.E.2d 1092, 1095.

 By allowing pedestrians and automobiles to use the "exit" driveway as an entrance to the parking lot without adequate safeguards or warnings to either, Lutheran used its premises, the parking lot, in such a way to affect the risk of injury of its invitees off its premises, the "exit" driveway. Because Lutheran knew the manner in which its invitees, both pedestrians and drivers, customarily used the driveway of the "exit" in connection with its invitation, it is under a duty to correct the dangerous conditions and guard against foreseeable injuries.[3] Thus,

---

3. In a related argument, Lutheran contends that the trial court erred by denying Lutheran's Ind.Trial Rule 50 Motion in which Lutheran argued that because of Blaser's location at the time of her injury Lutheran owed her no duty to protect her from the acts of the driver.

When the trial court considers a motion for judgment on the evidence, it must consider only the evidence most favorable to the non-moving party. *Bearman,* 453 N.E.2d at 1197. The motion may be granted only if there is no substantial evidence, or reasonable inference to be drawn therefrom, which supports an essential element of the claim. *Id.* If reasonable persons might differ as to the inferences to be drawn from the evidence, then judgment on the evidence is not proper. *Kecks v. Kerbs* (1979), Ind. App., 395 N.E.2d 845, 846.

The evidence most favorable to Blaser, as the non-moving party, is also that which best sup-

the trial court did not err by finding Lutheran owed Blaser the duty of reasonable care.

## II. Instructions

 Lutheran contends that the trial court erred by refusing Lutheran's Tendered Instruction No. 6 and giving Final Instruction Nos. 11 and 12. In our review of the propriety of a trial court's decision to give a tendered instruction, we look to see whether the instruction correctly states the law; whether the record contains evidence to support the giving of the instruction; and whether the substance of the tendered instruction is covered by other instructions which were given. *Evans v. State* (1991), Ind., 571 N.E.2d 1231, 1236. Instructional errors which do not prejudice the substantial rights of the defendant do not inevitably require reversal. *Boyd v. State* (1991), Ind., 564 N.E.2d 519, 523.

### A. Intervening Cause

Lutheran contends that the trial court erred by refusing Lutheran's Tendered Instruction No. 6 because there was sufficient evidence to support the giving of an instruction on the meaning and application of intervening cause.[4] It argues that because Blaser admitted that the hit-and-run driver was a cause of her injury, Lutheran should not be liable for Blaser's injuries. Relying on *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211, *reh'g denied,* and *Walker v. Jones* (1987), Ind.App., 511 N.E.2d 507, Lutheran argues that where a "defendant's negligence merely creates a condition by which the subsequent

injury producing acts of another are made possible, the existence of the first condition cannot be the proximate cause of the injuries, but is a remote cause." Appellant's Brief at 31. In other words, Lutheran argues that, assuming it had a duty of reasonable care towards Blaser and breached that duty by creating a dangerous condition, the hit-and-run driver was an efficient intervening cause who broke the chain of causation and relieved Lutheran of any liability for Blaser's injuries.

 The proximate cause of an injury is not merely the direct or close cause, rather it is the negligent act which resulted in an injury which was the act's natural and probable consequence in the light of the circumstances and should reasonably have been foreseen and anticipated. *Walker,* 511 N.E.2d at 508. The mere intervention of an independent negligent act will not in and of itself relieve the original negligent actor of legal responsibility; however, an intervening act will break the chain of liability if the intervention could not have been reasonably foreseen by the original negligent actor. *Stauffer v. Ely* (1971), 149 Ind.App. 93, 99, 270 N.E.2d 889, 892 (citations omitted). Thus, the fundamental test of proximate cause is reasonable foreseeability, and this rule is not changed by an independent, intervening act.[5] *Id.* The question of proximate cause depends upon whether the independent, negligent act could have been reasonably expected under the circumstances to intervene in such a way as to likely produce an injury similar to the one that occurred.

---

ports the jury's verdict. Thus, there were substantial evidence and reasonable inferences to support the essential elements of Blaser's claim, and the trial court did not err in denying Lutheran's motion.

4. Tendered Instruction No. 6 provided:

An intervening cause is a new and independent force that breaks the causal connection between the original negligence and the injury and itself becomes the direct and superseding cause of the injury.

If you find from a consideration of all the evidence that the damages sustained by the plaintiffs were proximately caused by a third-party or outside agency and that the negligence of the defendant did not proximately cause or contribute to cause the damages of the plaintiffs, then the plaintiffs are not entitled to recover

from the defendant. However, where an injury might reasonably be foreseen from the negligent act of another notwithstanding the intervention of an independent agency, the independent agency constitutes no defense and the one guilty of the original act of negligence is liable for the injuries sustained.
(R. 65).

5. Indiana follows this majority rule of foreseeability; however, Professor Prosser points out that the issue of intervening cause may more appropriately be considered in terms of duty which tends to direct attention to the policy issues involved. *Mansfield v. Shippers Dispatch* (1980), Ind.App., 399 N.E.2d 423, 426 (citing Prosser, Law of Torts (4th Ed.) 270, 288).

*Mansfield v. Shippers Dispatch* (1980), Ind. App., 399 N.E.2d 423, 426. The answer to this inquiry in the cases that Lutheran cites for support differs greatly from that which we arrive at in the case at bar.

In *Crull,* a manufacturer's negligence in installing a defective heater in a new trailer was not held to be the proximate cause of an explosion which took place after the heater had been repaired and the repair person neglected to connect the gas line to the heater. *Crull,* 471 N.E.2d at 1214–1216. When the owner tried to light the heater, the trailer exploded. *Id.* at 1214. The trial court found that the intervening act of the repair person was the proximate cause of the owner's injury, superseding any liability of the manufacturer due to the defective heater. *Id.* at 1216. Likewise, in *Walker,* a landowner's negligence in permitting the escape of a cow was not held to be the proximate cause of an accident which took place when two cars collided with each other as they slowed down to watch the attempted recapture of the cow. *Walker,* 511 N.E.2d at 510. In these cases, the manufacturer's and the landowner's negligence created a condition by which subsequent injury-producing action of others was made possible. The original tort feasor was relieved of liability for the injury because the subsequent negligent act was outside the original tort feasor's scope of foreseeable risk.

In *Crull,* the manufacturer risked an electrical fire, the plaintiff suffered a gas explosion after the repair person failed to connect the gas line; in *Walker,* the landowner's risked a car hitting the cow; the plaintiff suffered a car hitting another car. However, in the case at bar, Lutheran created an unsafe condition, and risked a car hitting a pedestrian at the "exit" of the parking lot. This was precisely the accident which occurred, thus the conduct which produced Blaser's injuries was within Lutheran's scope of foreseeable risks. Because the subsequent negligent act by the hit-and-run driver was foreseeable by Lutheran, the original tort feasor, the intervening negligent act of the driver does not in and of itself relieve Lutheran of legal responsibility. Thus, the admission by Blaser that the hit-and-run driver was a cause of her injury does not support Lutheran's theory that an unforeseen or unforeseeable intervening act was the proximate cause of Blaser's injuries and the trial court did not err by refusing an instruction on intervening cause.[6]

### B. Control of Premises

Lutheran contends that the trial court erred by giving Final Instructions Nos. 11 and 12.[7] It argues that the instructions suggested to the jury that Lutheran owed a duty to Blaser to exercise reasonable care to protect her from hit-and-run drivers while in a right-of-way over which Lutheran had only a statutory duty of maintenance. It is unclear whether Lutheran is arguing that the instructions are incorrect statements of law or that the record does not contain evidence to

---

6. Lutheran also argues that Final Instruction No. 7 compounded the trial court's error because that instruction defined proximate cause "by use of a phrase of exclusion, 'unbroken by any efficient intervening cause' without allowing Lutheran the opportunity to instructing [sic] the jury on the definition and application of intervening cause." However because we find the evidence at bar insufficient to require the giving of an instruction about intervening cause, we do not see how Lutheran was prejudiced by the court's refusal to define the term when it was used in another instruction.

7. Final Instruction No. 11 provides:
 An owner's duty of reasonable care may be extended beyond the owner's business premises when it is reasonable for invitees to believe the owner controls those premises adjacent to its own or when the owner knows invitees customarily use the adjacent premises in connection with the invitation; but that duty of reasonable care cannot be extended beyond the limits of the owner's actual control of those adjacent premises.
 (R. 158).

Final Instruction No. 12 provides:
 Under the law of the State of Indiana, the entire right-of-way occupied by paved Fairfield Avenue was under the exclusive control of the City of Fort Wayne; while the grass between the paved Fairfield Avenue and the sidewalk, the exit ramp and the sidewalk itself on the east side of the paved Fairfield Avenue, were under the control of the City of Fort Wayne by law, and under lesser control by Lutheran by its conduct in maintaining it.
 (R. 159).

support the instructions; however, neither argument can prevail.

To the extent that Lutheran argues that the instructions are not a correct statements of law, we have found that Lutheran did owe Blaser a duty of reasonable care beyond its actual premises which it breached by creating a dangerous condition on its premises. Likewise, to the extent that Lutheran argues that the record does not support the speculation that the hit-and-run driver was a visitor to Lutheran confused by inadequate signage or poor illumination, we have found that the accident which occurred was within Lutheran's scope of foreseeability, and thus Lutheran was the proximate cause of Blaser's injuries whether or not the driver was a visitor to the hospital.

### III. Damages

Lutheran contends that the damages awarded to Blaser were excessive, thus the trial court erred by denying Lutheran's motion to correct errors. It argues that the damages awarded are "so large given the nature and extent of [Blaser's] injuries as to indicate that the jury was motivated by prejudice, passion, partiality, corruption or considered some other improper element." Appellant's Brief at 21.

A verdict awarding damages will only be reversed when it is apparent from a review of the evidence concerning the injuries that the amount of damages assessed by the jury is so great as to indicate that the jury was motivated by prejudice, passion, partiality, or corruption, or considered some improper element. *Lazarus Dept. Store v. Sutherlin* (1989), Ind.App., 544 N.E.2d 513, 526, *reh'g denied, trans. denied; Baker v. Champion Motor Home Co.* (1987), Ind.App., 505 N.E.2d 144, 147, *reh'g denied, trans. denied.* We will not determine damages to be the result of improper considerations unless the amount of the award cannot be explained on any reasonable ground. *Burris v. Riester* (1987), Ind.App., 506 N.E.2d 484, 485, *reh'g denied, trans. denied.* In addition, in reviewing this claim we will not reweigh the evidence, but look only to the evidence and the reasonable inferences therefrom which uphold the verdict. *Id.*

After the accident, Blaser spent 44 days in the hospital. Her injuries included multiple fractures to her hip, bruises, abrasions, and disfiguring swelling in her hip area. At the time of trial, there remained a large unsightly swelling on her left hip. Blaser had other injuries and because of her existing medical condition, medication, which she was still taking at the time of trial, was necessary to counteract any blood clots that might occur secondary to her bedridden state. After her release from the hospital, Blaser was unable to care for herself and her husband for six months. She used a walker for five months, and has used a cane thereafter. At the time of trial, Blaser still could not care for her husband and house as she formerly could. She can no longer climb steps, and cannot pursue activities she once enjoyed or visit friends and relatives. A 1992 x-ray revealed degenerative changes in her lumbosacral spine and hip, and the presence of a fracture fragment which remained rotated out of shape. Blaser has also suffered psychological problems as a result of her injuries and has sought counseling.

In light of the evidence of her physical injuries, her permanent physical condition, her psychological condition, and the pain and suffering she has endured, we cannot conclude as a matter of law that the $535,000 award to Blaser was so high as to demonstrate passion or prejudice on the part of the jury. The award of damages was supported by sufficient evidence. *See Planned Parenthood v. Vines* (1989), Ind.App., 543 N.E.2d 654, 661–662, *trans. denied* (Award of damages to plaintiffs was not, as a matter of law, excessive even though respective verdicts were almost tenfold the special damages demonstrated).

Judgment affirmed.

MILLER and ROBERTSON, JJ., concur.