Mildred RAWLS, Appellant–Plaintiff,

v.

MARSH SUPERMARKET, INC., and First National Bank & Trust, Appellee–Defendant.

No. 34A05–0306–CV–274.

Court of Appeals of Indiana.

Jan. 28, 2004.

Brant J. Parry, Scott Sullivan, Noel & Noel, Kokomo, IN, Attorneys for Appellant.

Ty M. Craver, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Mildred Rawls appeal the trial court's grant of summary judgment in favor of First National Bank & Trust (First National), in her negligence claim against First National and Marsh Supermarket, Inc. (Marsh). She presents the following restated issue for review: Did the trial court improperly grant summary judgment in favor of First National?

We reverse and remand.

The facts most favorable to Rawls, the nonmoving party, reveal that First National owned and managed an Automated Teller Machine (ATM) at the Marsh supermarket formerly located at 200 Southway Boulevard East in Kokomo, Indiana. First National installed the ATM pursuant to a lease agreement with Marsh, signed in May 1979. First National relocated the ATM, with Marsh's approval, in 1986 or 1987. At that time, First National chose to mount the ATM on an exterior wall of the building near the east entrance of the supermarket. The ATM was situated on property owned exclusively by Marsh, and First National leased from Marsh a small area (approximately eight by ten feet) directly behind the ATM, in the interior of the store.

On February 5, 1999, Rawls stepped onto a narrow sidewalk in front of the ATM and withdrew cash from First National's ATM. After completing her transaction, Rawls turned to leave and her foot hit the curb, causing her to fall forward to the ground. Thereafter, on November 28, 2000, Rawls filed a negligence complaint against Marsh and First National. The basis of her claim is that the sidewalk in front of the ATM was not wide enough for her to safely turn around and leave the area.

On January 9, 2003, First National filed a motion for summary judgment, alleging that it did not owe a duty to Rawls. Following a hearing on said motion, the trial court granted summary judgment in favor of First National. Rawls now appeals from that ruling, arguing that First Na-

tional clearly owed a duty of care to its customer, Rawls.

■ Our standard of review in this regard is well settled:

In an appeal involving summary judgment, the appealing party bears the burden of persuasion, and we assess the trial court's decision to ensure that the parties were not improperly denied their day in court. We analyze the issues, however, in the same way as a trial court would. A party seeking summary judgment must show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The movant must designate sufficient evidence to eliminate any genuine factual issues, and once the movant has done so, the burden shifts to the nonmovant to come forth with contrary evidence. The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the non-movant, and resolve all doubts against the moving party.

*Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 460–61 (Ind.2002) (some citations omitted). Additionally, when the material facts are not in dispute, our review is limited to the determination of whether the trial court correctly applied the law to the undisputed facts. *Burkett v. Am. Family Ins. Group,* 737 N.E.2d 447 (Ind. Ct.App.2000).

■ To recover under a theory of negligence, a plaintiff must establish the following three elements: (1) A duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *City of Indianapolis v. Johnson,* 736 N.E.2d 295 (Ind.Ct.App.2000). The only element at issue here is whether First National owed

Rawls a duty. "Absent a duty, there can be no breach and, therefore, no recovery in negligence." *Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.,* 741 N.E.2d 383, 386 (Ind.Ct.App.2000). The existence of a duty is a question of law for the court to determine. *Baker v. Fenneman & Brown Properties, LLC,* 793 N.E.2d 1203 (Ind.Ct.App.2003). "Courts will generally find a duty where reasonable persons would recognize and agree that it exists." *Estate of Heck ex rel. Heck v. Stoffer,* 786 N.E.2d 265, 268 (Ind.2003). To determine whether a common law duty exists, we balance three factors: "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns." *Id.*

First National contends that these factors weigh in favor of finding no duty, especially where the lease agreement did not place it in the position of possessor or occupier of the premises where Rawls fell. First National notes that it was in possession of only a very limited area directly behind the exterior wall where the ATM was mounted. Moreover, First National observes that pursuant to the lease agreement, it was Marsh's duty to keep the premises where Rawls fell clean and in a good state of repair. First National argues further that the fall was not reasonably foreseeable because there were no prior reports of customers falling in that location. Finally, with regard to public policy considerations, First National argues that it was not in the best position to protect Rawls against injury because it had no control over the premises where she fell. First National, therefore, asserts that it would amount to an unreasonable burden were we to impose a duty on it to keep Marsh's property in a reasonably safe condition.

■ Under the concept of premises liability, a landowner or possessor/occupier of land[1] must exercise reasonable care for the protection of its invitees. *See Sowers v. Tri–County Tel. Co., Inc.,* 546 N.E.2d 836 (Ind.1989). In the instant case, First National did not own or occupy the land where Rawls fell under the traditional legal meaning of the words "own" or "occupy." It can be said, however, that First National retained an easement over said land so that its customers (i.e., invitees) could stand on the sidewalk while conducting transactions at the ATM.

In *Sowers,* our supreme court faced a similar, nontraditional, premises liability case. In that case, a telephone company hired a contractor to clear brush around its poles. One of the contractor's employees fell into an abandoned manhole located near one of the poles and brought suit against the telephone company, as well as the actual landowner, for negligence. Sowers claimed that the telephone company failed to use ordinary care to maintain its prescriptive easement in a reasonably safe condition. The telephone company responded that although Sowers was an invitee, it owed him no duty because it did not control the land where the manhole was located. The Court was not persuaded by this argument and concluded that the telephone company met the definition of a possessor/occupier of land, explaining:

> After all, Tri–County's poles and lines physically occupied a part of the property, and its right of entry arose from an easement necessary for maintenance of those poles and lines.

Because Tri–County is not a traditional landowner or occupier, however, it is necessary to ask what legal duty should flow from the company to its business invitees. That question involves consideration of more than just foreseeability of possible harm; it involves consideration of legal and social policies which include the foreseeability and likelihood of the injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant.

*Sowers v. Tri–County Tel. Co., Inc.,* 546 N.E.2d at 838. The Court then noted that these easements generally went unused for years and that it would place a great burden on the telephone company to require it to conduct regular inspections of all its easements for the sole purpose of discovering possible hazards. In defining the duty owed, the Court explained:

> We conclude that the duty of inspection and warning that the Court of Appeals imposed upon Tri–County cannot be justified. The boundaries of the duty of reasonable care that a utility such as Tri–County owes to its business invitees must be defined from the utility's own use of the easement. Tri–County exercised no dominion at all over the Bodkins' land most of the time except for the existence of its poles. Other than occasional entries to effect repairs, its only occupation arose through sending people like Sowers to trim vegetation. To the extent that Tri–County learned of dangerous conditions near its poles through these visits, of course, it had a duty to warn future invitees.

*Id.* at 839. Despite finding that a duty existed, the Court concluded as a matter of law that the telephone company had not

---

**1.** "The Restatement (Second) of Torts, Section 328E defines a possessor/occupier of land as: 'a person who is or has been in occupation of land with the intent to control it, or a person who is entitled to immediate occupa- tion of the land, if no other person is or has been in occupation of land with the intent to control it.' " *Duffy v. Ben Dee, Inc.,* 651 N.E.2d 320, 323 (Ind.Ct.App.1995), *trans. denied.*

breached its duty of reasonable care to Sowers.

In light of *Sowers,* it is evident that First National owed Rawls a duty of reasonable care under the theory of premises liability.[2] Rawls entered the land as an invitee of First National to conduct a transaction at the ATM, which necessarily required her to utilize the sidewalk. The likelihood of an invitee such as Rawls entering the area near the ATM is obviously significant. Moreover, if the sidewalk was actually too narrow (a question for the finder of fact), then we cannot say that an accident similar to Rawls's was not foreseeable.

For the purposes of this case, we need not determine whether First National's duty of reasonable care as a nontraditional possessor/occupier includes a continuing duty to inspect the areas surrounding each of its ATMs to ensure that they are reasonably safe for customers. Here, there is no claim that Rawls fell as the result of recent or temporary conditions upon the land (e.g., debris or ice),[3] conditions that Marsh would arguably be in the best position to protect against. Rather, the allegedly dangerous condition existed at the time of the ATM's placement in 1986 or 1987, at a location specifically chosen by First National.[4] Under these circumstances, it is sufficient for us to conclude that First National owed Rawls a duty of reasonable care in selecting the location of its ATM. Therefore, we remand for a determination by the trier of fact as to whether First National breached its duty of care and, if so, whether such breach proximately caused Rawls's injuries.

Judgment reversed and cause remanded.

SULLIVAN, J., and RILEY, J., concur.

---

**2.** *Lutheran Hosp. of Indiana, Inc. v. Blaser,* 634 N.E.2d 864 (Ind.Ct.App.1994), also supports the applicability of premises liability, despite the fact that First National leased only a small area behind the ATM and not the area upon which Rawls fell. In that case, we recognized that "[a] duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe that the invitor controls premises adjacent to his own *or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation." Id.* at 870 (emphasis supplied).

**3.** To the extent that First National learns of dangerous conditions near its ATMs, of course, it has a duty to remedy the conditions or warn future invitees. *See Sowers v. Tri–County Tel. Co., Inc.,* 546 N.E.2d 836.

**4.** There is no evidence that the width of the sidewalk has changed since the relocation of the ATM.