## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 26 2017, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James R. Fisher
Miller & Fisher, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Aimee Rivera Cole
Travelers Staff Counsel Indiana
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jennifer Benson, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Denison Parking, Inc. and City of Indianapolis, <br> *Appellee-Defendant.* | July 26, 2017 <br><br> Court of Appeals Case No. 49A02-1702-CT-372 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James B. Osborn <br><br> Trial Court Cause No. 49D14-1511-CT-37632 |

**Bailey, Judge.**

# Case Summary

Jennifer Benson ("Benson") fell on ice on a municipally-owned Indianapolis sidewalk six feet from a parking garage owned by the Capital Improvement Board of Managers of Marion County, Indiana ("the CIB"), managed by Denison Parking, Inc. pursuant to its contract with the CIB. Denison was granted summary judgment upon Benson's negligence claim and she appeals.[1] Benson presents a single consolidated and restated issue: whether the trial court erroneously granted summary judgment to Denison, because Denison was unable to demonstrate the absence of its contractual or common-law duty of reasonable care to Benson. We affirm.

# Facts and Procedural History

On February 21, 2014, at approximately 7:35 a.m., Benson had completed an eight-hour shift as a nurse at the Marion County Jail and was walking to her vehicle. The vehicle was parked in the Virginia Avenue Garage, a facility owned by the CIB and managed by Denison. Benson was on the public sidewalk approximately six feet from the pedestrian entrance to the parking garage when she slipped on ice and fell, sustaining serious injuries.

---

[1] In a separate order of January 31, 2017, the trial court granted summary judgment to the City of Indianapolis. That order is not challenged in this appeal.

[3] On November 12, 2015, Benson filed a negligence complaint against Denison. On February 18, 2016, she filed an amended complaint to add the City of Indianapolis ("the City") as a defendant. Benson's amended complaint alleged that Denison and the City each breached a duty "to exercise reasonable care in the maintenance of the walking surface on which the Plaintiff fell." (App. Vol. II pg. 75.) On October 13, 2016, Denison filed a motion for summary judgment upon Benson's complaint, asserting that it owed Benson no duty of care; Benson filed a cross-motion for partial summary judgment. After a hearing, the parties submitted briefs to the trial court addressing whether Denison owed a duty of care to Benson.

[4] On January 13, 2017, the trial court granted Denison's motion for summary judgment. This appeal ensued.

# Discussion and Decision

[5] Benson argues that summary judgment was improvidently granted. She asserts that Denison had a common-law duty to exercise reasonable care for her safety and also, she is a third-party beneficiary of the management contract between CIB and Denison.

[6] Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C). To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material

facts negate at least one element of the other party's claim. *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012). Once the moving party has met this burden with a prima facie showing, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Morris v. Cain*, 71 N.E.3d 871, 879 (Ind. Ct. App. 2017).

[7] In an appeal involving summary judgment, the appealing party bears the burden of persuasion, and we assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 460 (Ind. 2002). In so doing, we accept as true those facts alleged by the non-moving party, construe the evidence in favor of the non-movant, and resolve all doubts against the moving party. *Id.* We may affirm summary judgment if it is proper on any basis shown in the record. *Morris*, 71 N.E.3d at 879.

[8] A negligence claim is established by showing (1) a duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach of that duty. *City of Indianapolis v. Johnson*, 736 N.E.2d 295, 297 (Ind. Ct. App. 2000). Summary judgment is rarely appropriate in negligence cases because they are particularly fact sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Winfrey*, 963 N.E.2d at 612. However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim, such as whether a duty is

owed to the plaintiff. *Winchell v. Guy*, 857 N.E.2d 1024, 1027 (Ind. Ct. App. 2006). "Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide." *Id.*

[9] In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). The rationale is to subject to liability the person who could have known of any dangers on the land and acted to prevent any foreseeable harm. *Id.* The entrant's status on the land, as invitee, licensee, or trespasser, is determinative of the particular duty that the landowner, or occupier of land, owes. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991).

[10] An invitee is a person who goes onto the land of another at the express or implied invitation of an owner or occupant either to transact business or for the mutual benefit of invitee and owner or occupant. *Markle v. Hacienda Mexican Rest.*, 570 N.E.2d 969, 971 (Ind. Ct. App. 1991).[2] Benson asserts that she was

---

[2] In *Burrell*, our supreme court defined a landowner-invitor's duty to an invitee:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

    (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

    (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

    (c) fails to exercise reasonable care to protect them against the danger." *Burrell*, 569 N.E.2d at 639-640 (quoting Restatement (Second) of Torts § 343 (1965)).

Denison's business invitee, en route to her parked vehicle.[3] It is well-settled that an invitor owes its invitee a duty to exercise reasonable care while the invitee is "on [the invitor's] premises." *City of Indianapolis*, 736 N.E.2d at 298.

[11] Benson fell on the public sidewalk owned by the City of Indianapolis and thus there is no duty on Denison's part based upon ownership of the sidewalk. As for a duty based upon occupancy, Benson argues that the CIB garage "premises" managed by Denison were necessarily expanded beyond a legal property description, to include a reasonable means of ingress and egress.

[12] In response, Denison argues that Benson was a public pedestrian at the time of her fall and the duty to maintain safe public sidewalk conditions lies solely with the City. Denison points to the rationale enunciated in *Lawson v. Lafayette Home Hosp., Inc.*, 760 N.E.2d 1126, 1129 (Ind. Ct. App. 2002), an appeal from the grant of summary judgment for the defendant hospital after a pedestrian sued for injuries he sustained after slipping and falling on a public sidewalk adjacent to the hospital:

> It is well settled in Indiana that an owner or occupant of property abutting a public street or sidewalk has *no* duty to clear those streets and sidewalks of ice and snow. …Additionally, municipal ordinances that require abutting owners or occupiers to remove snow and ice from public sidewalks do not, as a matter of law,

---

[3] It is undisputed that CIB is the actual property owner of the garage. However, Denison occupied the garage as a limited agent of CIB. *See Schneider v. Paragon Realty, LLC*, 55 N.E.3d 374, 379 (Ind. Ct. App. 2016) ("by virtue of the property management agreement, Paragon was a limited agent of Heartland, Bubbaz' landlord.")

> create a duty under which an owner or occupier can be held liable to third party pedestrians.

(citations omitted; emphasis in original.)

[13] The *Lawson* Court then addressed the appellant's argument that the hospital had assumed a duty. *See id.* "In Indiana, persons are held to have assumed a duty to pedestrians on public sidewalks only when they create artificial conditions that increase risk and proximately cause injury to persons using those sidewalks." *Id.* at 1130. The hospital's removal of snow from the sidewalk and placement in piles on the ground "did not create an artificial condition increasing the risk of harm to Lawson." *Id.*[4]

[14] Relying upon *Lawson*, a panel of this Court found no duty on the part of Denison in a case involving apparently identical snow removal management procedures[5] and a factual scenario very similar to the instant case. *Denison*

---

[4] The *Lawson* Court approvingly cited *Halkias v. Gary Nt. Bank*, 142 Ind. App. 329, 332, 234 N.E.2d 652, 654 (1968) for the proposition that "Such [snow removal] efforts to reduce the danger to pedestrians, though they may not be legally required, are generally considered desirable and worthy, and should not be discouraged by holding such persons liable simply because they endeavor to do so."

[5] The language in the Snow Removal section of the Operating Plans, Exhibit A, designated herein, (App. Vol. II, pg. 19) is identical to that of the "Snow Removal" section of Denison's internal employee manual quoted in the prior *Denison* case:

> A company contracted vendor will perform *initial* snow removal from the roofs and the sidewalks of parking facilities, in addition to salting or sanding all applicable areas. After initial snow removal, however, each facility is responsible for monitoring and keeping abreast of the need for further snow removal services.
>
> IT IS IMPERATIVE TO STAY ON TOP OF SNOW REMOVAL! In the event of a long response time from a contractor, it becomes the manager's responsibility to ensure that the facility's sidewalks are cleared and salted or sanded, whether the snowfall occurs during the daytime, evenings, overnight, or on the weekend. If for some reason the designated staff person at a particular location cannot remove the snow, a

*Parking, Inc. v. Davis*, 861 N.E.2d 1276 (Ind. Ct. App. 2007), *trans. denied*. There, the plaintiff, Barbara Davis ("Davis"), had parked her vehicle in a Denison-managed garage and headed to work. While walking on the sidewalk in front of Market Square Arena, she slipped on a patch of ice. *See id. at* 1277-78. Denison was responsible for snow removal from the sidewalks at Market Square Arena pursuant to its management contract with the CIB. *See id.* at 1278. Denison moved for summary judgment upon a negligence complaint filed by Davis and summary judgment was denied. On appeal, a panel of this Court considered whether Denison owed a common law or statutory duty to Davis.[6] *See id*. at 1280-81.

[15] The Court found that Denison had no common-law duty to Davis, observing that "a *municipality* has a common law duty to exercise reasonable care and diligence to keep its streets and sidewalks in a reasonably safe condition for travel." *Id.* at 1280 (emphasis in original). Moreover, the Court stated that a like result would ensue under the balancing test set forth in *Webb v. Jarvis*, 575

---

backup person should be designated to provide these services. If not, the manager may have to clear away the snow and salt and sand until a contractor can be contacted.

It is also the manager's responsibility to ensure that adequate snow removal supplies are kept on hand, such as ice melt (plus scoop and spreader), sand, shovels, and snow blower. Make a regular checkup of these supplies. DO NOT WAIT UNTIL THE DAY OF A SNOW TO ORDER ICE MELT OR RELATED SUPPLIES!

*See Denison*, 861 N.E.2d at 1278.

[6] The statutory claim was premised upon Indianapolis Municipal Code Section 931-102, providing: "A registrant under this chapter shall keep the surrounding sidewalks and driveways leading into a commercial parking facility reasonably free from dirt, water, ice, sleet and snow and in a safe condition for the travel of pedestrians."

N.E.2d 992 (Ind. 1991).[7] Finally, the Court reaffirmed that city ordinances "are not enacted for the protection of individuals using the streets but rather are for the benefit of the municipality." *Id.* at 1281.

[16] In reaching its decision, the *Denison* Court reiterated that "In Indiana, persons are held to have assumed a duty to pedestrians on a public sidewalk *only* when they create artificial conditions that increase risk and proximately cause injury to persons using those sidewalks." *Id.* (emphasis in original).[8] The Court further observed that "the simple removal of the natural accumulation of snow and ice from a public sidewalk has never been held to be an artificially created condition that increases risk so as to serve as the basis of liability in Indiana." *Id.*; *see also Bowman v. Tippmann Enterprises*, 868 N.E.2d 1172 (Ind. Ct. App. 2007) (relying upon *Denison* to conclude that summary judgment was properly granted to Wells Fargo Bank, which did not owe a duty to a pedestrian who

---

[7] In *Webb*, in deciding whether a doctor owed a duty to a third party injured by the doctor's patient, our supreme held that, in order to determine whether a duty exists, courts employ a three-part balancing test: (1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns. 575 N.E.2d at 995. The Indiana Supreme Court has since clarified that although the *Webb* three-part balancing test is a useful tool in determining whether a duty exists, this is so "only in those instances where the element of duty has not already been declared or otherwise articulated." *No. Ind. Public Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003).

[8] Legislation may be drafted to make an abutting landowner liable to a pedestrian injured by a defect in a public sidewalk. *See Romano v. Leger*, 72 A.D.3d 1059, 1059, 900 N.Y.S.2d 346. ("An abutting landowner will be liable to a pedestrian injured by a defect in a public sidewalk only when the owner either created the condition or caused the defect to occur because of a special use, or when a statute or ordinance places an obligation to maintain the sidewalk on the owner *and expressly makes the owner liable for injuries caused by a breach of that duty*.") (emphasis added.)

slipped on snow and ice where the sidewalk intersected with the entrance into the drive-through lanes), *trans. denied*.

[17] Benson has not alleged that Denison, by its conduct as the limited agent of CIB, increased a risk to Benson or created an artificial condition. The designated materials indicate that the accumulation of ice, a natural event, took place during Benson's work shift. Benson walked on a public sidewalk near CIB's garage, managed by Denison, with the expectation that she would return to her vehicle; instead, she fell. Benson does not acknowledge or distinguish *Denison* or its progeny. Rather, she argues: "it has long been established that a property owner owes a duty to an invitee to provide a safe and suitable means of ingress and egress to the business property, for its customers." Appellant's Brief at 16. She urges that the duty to an invitee may be expanded beyond "the premises" pursuant to a "test," Appellant's Brief at 17, enunciated in *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 772 (Ind. Ct. App. 1994):

> A duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation.

[18] To the extent that this language may be said to comprise a "test," it must be read in conjunction with the language preceding it:

> An invitor's duty normally extends only to its "premises."
> However, we recognize that in this case "the premises" may not

be limited to the area actually owned or leased by the Pub *because its business activities extended beyond its legal boundaries*."

*Id.* (emphasis added). In *Ember*, a bar patron had been attacked and beaten by three assailants across the street from O'Sullivan's Italian Pub ("the Pub"). *See id.* at 766. After the patron brought a negligence suit, the trial court concluded that the Pub had no duty to the patron in those circumstances. This Court reversed a grant of summary judgment in favor of the Pub, observing that a reasonable inference could be drawn that the Pub had gratuitously assumed a duty to patrol the area in question and possibly failed to perform its duty in a reasonable manner. *Id.* at 773. More specifically, the designated record indicated that: "the Pub maintained police and civilian patrols outside its premises due to its acknowledged adverse effect on the immediate neighborhood[9]," *id.* at 767, "the Pub distributed a flyer emblazoned with its phone number which implored area residents to call the Pub before the police in case of problems in the neighborhood," *id.* at 770, "the Pub knew its parking lot was insufficient for its patrons' use," *id.* at 772, and the attack had commenced at the entrance to an "overflow" lot. *Id.* Accordingly, the bar patron had not lost his invitee status while waiting outside the Pub's legal boundaries. *Id.*

[19]   Benson also directs our attention to *Rawls v. Marsh Supermarket, Inc.*, 802 N.E.2d 457 (Ind. Ct. App. 2004). First National Bank & Trust ("First National")

---

[9] In a submission to the Indiana Alcoholic Beverage Commission, the Pub had represented that the officers were responsible for maintaining order in the parking lot and any adjoining streets.

entered a lease agreement with Marsh Supermarket, Inc. ("Marsh") and mounted an ATM on an exterior wall of Marsh's building. Rawls, an ATM customer, struck her foot on a curb as she turned to leave the ATM and fell on the ground. *See id.* at 458. Rawls sued both First National and Marsh; First National was granted summary judgment on the basis that it owed no duty to Rawls. *See id.*

[20] A panel of this Court reversed the grant of summary judgment, concluding "it is evident that First National owed Rawls a duty of reasonable care under the theory of premises liability." *Id.* at 461. The Court elaborated:

> Rawls entered the land as an invitee of First National to conduct a transaction at the ATM, which necessarily required her to utilize the sidewalk. The likelihood of an invitee such as Rawls entering the area near the ATM is obviously significant. Moreover, if the sidewalk was actually too narrow (a question for the finder of fact), then we cannot say that an accident similar to Rawl's was not foreseeable.

> For the purposes of this case, we need not determine whether First National's duty of reasonable care as a nontraditional possessor/occupier includes a continuing duty to inspect the areas surrounding each of its ATMs to ensure that they are reasonably safe for customers. Here, there is no claim that Rawls fell as the result of recent or temporary conditions upon the land (e.g., debris or ice), conditions that Marsh would arguably be in the best position to protect against. Rather, the allegedly dangerous condition existed at the time of the ATM's placement in 1986 or 1987, at a location specifically chosen by First National. Under these circumstances, it is sufficient for us to conclude that First National owed Rawls a duty of reasonable care in selecting the location of its ATM.

*Id.*

[21] In reaching its decision, the *Rawls* Court found support in *Lutheran Hosp. of Indiana, Inc. v. Blaser*, 634 N.E.2d 864 (Ind. Ct. App. 1994), a case to which Benson also directs our attention. There, the Court affirmed a jury verdict in favor of an injured pedestrian, and recognized that "[a] duty of reasonable care may be extended beyond the business premises when it is reasonable for invitees to believe that the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation." *Id.* at 870.

[22] In that case, Joy Lee Blaser ("Blaser"), was struck by a vehicle and injured in a parking lot driveway near Lutheran Hospital of Indiana at Fort Wayne ("Lutheran Hospital"). *See id.* at 867-68. A jury awarded Blaser damages and Lutheran Hospital appealed, contending that it only had a duty to maintain the parking lot driveway and did not control the public right-of-way to the driveway. *See id.* at 868. This Court recognized that Lutheran Hospital was a business invitor having a duty to guard against subjecting Blaser to dangers of which Lutheran Hospital was cognizant of or might have reasonably foreseen. *Id.* The duty extended beyond Lutheran Hospital's "actual premises" because it "creat[ed] a dangerous condition on its premises." *Id.* at 873. Lutheran Hospital created the dangerous condition by its design selection and failure to correct misleading signage. Pedestrians gravitated toward and were not discouraged from using a conspicuous mid-block canopied entrance that was away from the marked and lighted intersections with crosswalks. *See id.* at 869.

Also, drivers were "funneled" into an "entrance" for delivery trucks that was intended to be an "exit" for automobiles; Blaser had been struck from behind by an automobile turning into the parking lot "exit." *See id.*

[23] In sum, we have recognized a duty extending beyond the actual premises of a business invitor where the invitor extended its business activities into abutting property or the invitor implemented measures that increased the risk to patrons in abutting property. Here, by contrast, the designated record reveals no such expansion of business activity into abutting property. Without an expansion of business activity, there is no basis for expansion of business premises like that recognized in *Ember, Rawls*, or *Lutheran Hospital*. The designated facts here are not distinguishable from those of *Denison*, *supra*; they do not support an expanded scope of premises for purposes of determining premises liability.

[24] Additionally, Benson asserts that she is a third-party beneficiary of the contract between the CIB and Denison. "Under Indiana law, one who is not a party to a contract may enforce the contract by demonstrating that they are a third-party beneficiary." *Nat. Bd. of Examiners v. American Osteopathic Ass'n*, 645 N.E.2d 608, 618 (Ind. Ct. App. 1994). A third-party beneficiary contract exists when (1) the parties intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of the third-party; and (3) the performance of the terms of the contract renders a direct benefit to the third party intended by the parties to the contract. *Id.* Among these three factors, the intent of the contracting parties to benefit the third party is the controlling factor. *Id.* The intent to benefit may be shown by specifically naming the third party or by

other evidence.  The intent is that the promising party "shall assume a direct obligation to" the third party.  *Id.*

[25]  Here, the contract provides that Denison, the Parking Contractor, is to perform services pursuant to operating plans set forth in Exhibit A to the contract.  The operating plans include bullet points and, under the "Customers" heading, the following language appears:  "Remove snow and ice build up that may restrict the safety of pedestrian traffic."  (App. Vol. II pg. 18).  A section entitled "SNOW REMOVAL" provides that a company-contracted vendor will perform initial snow removal from the roofs and sidewalks of parking facilities, in addition to salting or sanding all applicable areas.  (App. Vol. II pg. 19.)  After the initial snow removal, each facility is to be responsible for monitoring the need for further snow removal services.

[26]  Jeffrey Lee Allsup, the project manager for CIB parking properties,[10] explained in his deposition the process employed for snow removal:

> Typically, whenever there's snow predicted, I get with our snow team, as I call it.  We have a maintenance services group which works specifically for Denison Parking that does major snow removal.  Then I have, as I call them, my snow team in house that does minor snow removal; spread salt, what have you. . . . [The maintenance service group] basically take[s] care of the roof

---

[10] This job title could suggest that Allsup is employed by CIB.  However, Allsup stated in his deposition: "We simply are the management company."  (App. Vol. II pg. 53.)

there.  They don't do the sidewalks.  Sidewalks are done by my in-house staff.

(App. Vol. II pg. 54.)

[27] Benson argues that, because the language "Remove snow and ice build up that may restrict the safety of pedestrian traffic" appears within the Exhibit A section "a. Customers," (App. Vol. II pg. 18), and she was a Denison parking customer, she was "an intended, specifically designated third party beneficiary of Denison's written contract with the CIB." Appellant's Brief at 10. To the extent that Benson may now be understood to say that a genuine issue of material fact exists as to whether Denison assumed a direct obligation to her, this argument is raised for the first time on appeal. Benson's complaint does not assert that she was a third-party beneficiary of a contract and she did not raise the issue in opposition to Denison's motion for summary judgment. A party may not change its theory of the case on appeal and argue an issue which was not properly presented to the trial court. *Nat. Bd. of Examiners*, 645 N.E.2d at 618. As such, Benson's claim that the trial court improvidently granted summary judgment to Denison because Benson was a third-party beneficiary of Denison's contract with the CIB is waived. *See also* Trial Rule 56(H) ("No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court.")

# Conclusion

The trial court did not err in granting summary judgment in favor of Denison upon Benson's negligence claim.

Affirmed.

Vaidik, C.J., and Robb, J., concur.